**In re Richard Tozour ALLIGER, Debtor.**

**Richard T. ALLIGER, Plaintiff,**

v.

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, Defendant.**

**Bankruptcy No. 86–05429F.**
**Adv. No. 87–0209F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 5, 1987.

---

5. I decline to follow *In re Monterey House, Inc.,* 71 B.R. 244 (Bankr.S.D.Tex.1986) to the extent it holds to the contrary.

Jacquelyn A. Barnes, Jacoby & Meyers, Philadelphia, Pa., for debtor/plaintiff, Richard T. Alliger.

K. Kevin Murphy, PHEAA, Harrisburg, Pa., for defendant/PHEAA.

Christine Shubert, Camden, N.J., trustee.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge:

This case requires me to determine whether a student loan is dischargeable pursuant to 11 U.S.C. § 523(a)(8)(B) because it will impose "undue hardship" on the debtor. Based on the evidence before me, I conclude that it is dischargeable.

## FINDINGS OF FACT

1. In 1985, the debtor, Richard Alliger, obtained a $2,500.00 student loan for the purpose of attending graduate school at Temple University.

2. The defendant, Pennsylvania Higher Education Assistance Authority (PHEAA), guaranteed the loan.

3. At trial, the only evidence presented was testimony of the debtor. The debtor's testimony was credible.

4. The debtor is 52 years old and unmarried with no dependents.

5. The debtor attended Temple University graduate school in 1984 and 1985 and did work toward a graduate degree in art. During that time, the debtor did not receive sufficient credits for a degree.

6. In December, 1985, the debtor obtained employment teaching art in a private school in Detroit, Michigan.

7. Subsequently, the debtor injured his back while loading furniture into a truck.

8. Because debtor was unable to work full time, he lost his job.

9. Since then, virtually the debtor's only income has been disability insurance in the amount of $775.00 per month from a private insurance policy obtained by him when he was employed. He has been receiving this disability insurance payment for approximately 18 months.

10. Debtor's current income is approximately 60% of his previous income as an art teacher.

11. The disability insurance benefits presently received by debtor are due to expire in November of 1987.

12. If debtor is unable to become employed when his disability insurance expires, the debtor's income will be drastically reduced.

13. At present the debtor's living expenses include $400.00 per month rent, $150.00 per month utilities, $30.00 per month transportation and in excess of $200.00 per month additional expenses for food and other household goods.

14. At present, debtor's living expenses are equal to or exceed his income.

15. At present, the debtor does not know when, if ever, his back injury will heal to the extent necessary to allow him to become employed.[1]

## CONCLUSIONS OF LAW

1. The plaintiff/debtor has the burden of proof in establishing, by a preponder-

---

[1]. The only testimony about the expected duration of the debtor's disability was a letter from debtor's treating physician which the debtor read into the record, without objection. In its entirety, the letter stated

Mr. Richard Alliger is being treated for a suspected herniated lumbar disc. His progress has been poor and his prognosis is guarded.

His length of disability is undetermined at this time.

ance of the evidence, that a student loan is dischargeable because of "undue hardship".

2. Based on the evidence presented at trial, the plaintiff/debtor has established by a preponderance of the evidence that excepting his student loan from discharge will impose an undue hardship upon him.

## DISCUSSION

11 U.S.C. § 523 lists certain types of debts which are nondischargeable for individuals filing petitions under chapter 7 of the Bankruptcy Code. Of concern here is Section 523(a)(8) which makes nondischargeable a debt:

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Since the student loan did not first become due more than five years from the date this chapter 7 case commenced, indeed the loan was only granted in 1985, the only basis for granting the debtor a discharge of this debt is the undue hardship exception found in § 523(a)(8)(B).

The Bankruptcy Code does not contain a definition of "undue hardship." Numerous factors have been considered relevant by various courts including: the debtor's current income and expenses; *see e.g., In re Andrews*, 661 F.2d 702 (8th Cir.1981); the debtor's potential future income and expenses; *see e.g., In re Springer*, 54 B.R. 910 (Bankr.D.Neb.1985); the current and

expected physical condition of the debtor; *see e.g., In re Norman*, 25 B.R. 545 (Bankr. S.D.Cal.1982); and the debtor's good faith efforts to repay the loan. *See e.g., In re Brunner*, 46 B.R. 752 (S.D.N.Y.1985).

In an early decision under the Code, current Chief Judge Twardowski of this Court admirably attempted to catalogue relevant considerations and to incorporate them in the decision making process. *In re Johnson*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979). Judge Twardowski's approach has been followed by numerous courts in other jurisdictions. *See e.g., In re Binder*, 54 B.R. 736 (Bankr.D.N.D.1985); *In re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1982). It has been stated that the criteria set forth by Judge Twardowski "allow the triers of fact to consider the totality of the circumstances." *Albert, supra*, at 101.

More recently, my colleague Judge Scholl of this Court has attempted to set forth a more objective test for defining "undue hardship." The crux of his approach is to analyze the debtor's net income with respect to the federal poverty guidelines. Where that income is not substantially above the guideline, a presumption of dischargeability is essentially created. Where the debtor's net income is substantially above the poverty guideline, the debtor must show "unique" or "extraordinary" circumstances which would prevent repayment of the loan. *In re Bryant*, 72 B.R. 913 (Bankr.E.D.Pa.1987).

In the case before me, the parties have effectively narrowed the issues presented for decision.[2] Defendant has not contested the debtor's contention that his current income is barely sufficient to cover his legitimate living expenses.[3] Instead defendant has argued only that plaintiff was unable "to present any testimony as to the [anticipated] duration of his back injury." (Defendant's Brief at p. 4.) Defendant asserts

---

2. Therefore, I need not choose between the various approaches offered by my colleagues or by other courts. As will be discussed, both approaches focus, in large part, upon the debtor's probable future income or earning potential.

3. While debtor's current income seems to be significantly above the poverty level, *see Bryant*,

*supra*, his expenses consist solely of rent, utilities, transportation, food and household goods. Defendant did not present evidence at trial, nor did it argue in its brief, that debtor's current living expenses were excessive so that they could be reduced to allow payment of a student loan.

that if the debtor recovers and returns to gainful employment, he will be able to repay his student loan without hardship.

Defendant's position correctly recognizes that expectation of future income is a very significant consideration in determining whether "undue hardship" exists within the meaning of § 523(A)(8)(B). *See In re Johnson, supra* at 536; *In re Bryant, supra* at 919.

As Judge Twardowski noted in *Johnson, supra* at 536:

> essentially we must ascertain what sources of income are likely to be available to the debtor in the future, during the years when loan payments will be required, and whether this income will be sufficient to support the debtor and his dependents at a "minimal standard of living" in addition to funding repayment of the student loan.

*See also, Bryant supra* at 919.[4]

This case, as it has been presented to me, centers upon a difficult prediction regarding the debtor's health, likely recovery and ability to obtain future employment, issues upon which the parties have offered very little evidence. The debtor is currently suffering a disability which may or may not continue into the indefinite future. Whether he will recover and, if so, when, is at the heart of this dispute.

■ Initially, I note that it is the debtor who bears the burden of proof in making a case for dischargeability on the basis of undue hardship. *In re Keenan*, 53 B.R. 913 (Bankr.D.Conn.1985); *In re Fitzgerald*, 40 B.R. 528 (Bankr.E.D.Pa.1984); *In re*

*Norman*, 25 B.R. 545, 547–49 (Bankr.S.D. Cal.1982). The debtor need only carry this burden by a preponderance of the evidence. *In re Holzer*, 33 B.R. 627 (Bankr.S.D.N.Y. 1983); *In re Richardson*, 32 B.R. 5 (Bankr. S.D.Ohio 1983); *In re Norman, supra. See generally* Cleary, *McCormick on Evidence* § 339 at 793 (2d ed. 1978) (*"McCormick"*). Once the debtor has made a showing which would support a determination that "undue hardship" exists, the burden of production shifts to the educational loan creditor to present some evidence to rebut the debtor's case.[5] *See generally McCormick, supra.*

■ In the case before me, the debtor has carried his initial burden. He testified that his back injury has disabled him for an 18 month period and that it precludes him from work now and in the foreseeable future. Although his doctor could not anticipate how long the injury would last, neither the debtor nor his doctor were able to predict a future return to work. Further, the debtor testified that he is currently 52 years old, a factor which might hamper his ability to become employed were he to recover his health. The debtor also explained that his disability payments of $775.00 monthly are insufficient to meet his current expenses for necessities. Since debtor's disability payments will end in November, 1987, his income is subject to decrease rather than increase. While this evidence is rather sparse, it does meet the initial evidentiary burden which the debtor faced.

■ In response, defendant presented no evidence whatsoever. It relies on the bare assertion that the debtor may recover and

---

**4.** The "undue hardship" language in present section 523(a)(8)(B) apparently emerges from language originally drafted by the Commission on the Bankruptcy Laws in its proposed Bankruptcy Act of 1973, at Section 4–506. In attempting to clarify when "undue hardship" would exist, the Commission report states:

> "In order to determine whether nondischargeability of the debt will impose 'undue hardship' on the debtor, the rate and amount of his future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt

> should be adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt."

Report of the Commission on the Bankruptcy Laws, Part II House Document 93–137, 93rd Cong. 1st Sess. (1973) at 140–41. *See, In re Kohn*, 5 B.C.D. 419, 423 (Bankr.S.D.N.Y.1979).

**5.** I have no doubt that given PHEAA's size, loan volume and resources, it has the capacity to present evidence, including expert testimony if necessary, on issues such as a debtor's medical condition. I note also that Bankruptcy Rule 7035 makes F.R.Civ.P. 35 (regarding physical and mental examination of persons) applicable to adversary proceedings in this court.

return to work. In that event, it claims, the debtor would suffer no hardship at all in repaying the loan. Obviously, if the debtor does regain his health, and becomes employed again as an art teacher (or in some comparable position), the defendant would be correct in its assertion. However, the problem with defendant's position is that it offered absolutely no evidence that debtor's condition will improve. The only evidence presented was debtor's testimony that his condition has persisted for 18 months, that he does not believe that his condition will improve in the foreseeable future, and that his physician's opinion is that his "prognosis is guarded." If that prognosis proves accurate, he will continue to be unemployable long after his disability insurance payments terminate. Certainly, any attempt to repay his student loan under these circumstances would cause him "undue hardship".

Thus, in the absence of any evidence to the contrary, I am compelled to conclude that the debtor has met his burden of proof and that he is entitled to discharge his student loan debt.[6]

An order consistent with this opinion will be entered.

---

**6.** *Compare, In re Motor,* 64 B.R. 317 (Bankr.W. D.Pa.1986) (student loan debt not discharged for undue hardship where, despite debtor's illness, evidence included employment record showing marketable skills and debtor's ability to hold part-time employment). No such evidence was presented in the case at bench.