In re Glynn E. SIMONS, Marilyn I. Simons, Debtors.

Glynn E. SIMONS, Marilyn I. Simons, Plaintiffs,

v.

HIGHER EDUCATION ASSISTANCE FOUNDATION and the Loan Servicing Center of Utah, c/o HEAF, Defendants.

Bankruptcy No. 3–89–00966.
Adv. No. 3–89–0266.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Sept. 24, 1990.

Randall E. Breaden, Greenville, Ohio, for plaintiffs.

Eileen K. Field, Cincinnati, Ohio, for defendants.

## DECISION ON ORDER DETERMINING STUDENT LOAN OBLIGATIONS TO BE EXCEPTIONS TO THE DEBTORS' DISCHARGES AND ENTERING JUDGMENT

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order Of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)-determinations as to the dischargeability of particular debts.

### FINDINGS OF FACT

Based upon the parties' stipulations and exhibits (Doc. 13 and Doc. 19), the Court makes the following findings of fact:

1. On September 12, 1989, Glynn and Marilyn Simons ("Debtors") filed a Complaint to Determine Dischargeability of student loan debts.

2. The student loans at issue do not fall within the exception of 11 U.S.C. § 523(a)(8)(A), as they did not first become due before five years before the date of the filing of the petition.

3. The only issue to be decided by the Court is whether excepting the student loan debt from discharge will impose an undue hardship on the Debtors and the Debtors' dependents.

4. On or about July 29, 1988, Marilyn Simons executed a promissory note payable to the order of Bank IV, N.A., in the principal amount of $1,000 ("First Note").

5. On or about July 29, 1988, Glynn Simons executed a promissory note payable to the order of Bank IV, N.A., in the principal amount of $2,625 ("Second Note").

6. On or about August 5, 1988, Marilyn Simons executed a promissory note payable to the order of Bank IV, N.A., in the principal amount of $2,625 ("Third Note").

7. On or about August 5, 1988, Glynn Simons executed a promissory note payable to the order of Bank IV, N.A. in the principal amount of $1,000 ("Fourth Note").

8. Interest accrues on the principal balance on the First Note and Fourth Note at the current rate of 12% per annum simple interest, accrued daily, and accrues on the Second Note and Third Note at the constant rate of 8% per annum simple interest, accrued daily.

9. Marilyn Simons is in default in her obligation to repay the First and the Third Note, and Glynn Simons is in default in his obligation to repay the Second and the Fourth Note.

10. The First Note, Second Note, Third Note, and Fourth Note ("Notes") require the Debtors to pay reasonable attorneys' fees and costs of collection. Attorney fees incurred by the Foundation as of June 12, 1990 in this matter are approximately $500.00, and are expected to total approximately $1,500.

11. The Notes evidence student loans made to the Debtors under the Guaranteed Student Loan Program ("GSLP") established by the Higher Education Act of 1965, Pub.L. No. 89–329, Nov. 8, 1965, Title IV, 79 Stat. 1219 (20 U.S.C. §§ 1071–1087–4). The Foundation is a guaranty agency under the GSLP which has accepted claims made under the terms of its guaranties. The Notes were endorsed and assigned to the Foundation.

12. The Foundation has offered to reduce the repayment schedule to $50.00 per month total on all the Notes until paid in full, interest to accrue at the rates in the Notes, and all other terms in the Notes to continue as contained therein.

13. The Debtors utilized the proceeds of the guaranteed student loans to enroll in an educational program at United Schools, Inc. The last lesson Marilyn Simons received was on November 14, 1988. Glynn Simons officially withdrew from the program on July 15, 1989. The Debtors completed the correspondence portion of the course, but not the classroom or driving portions. These portions of the course were not completed because during this time Marilyn was being treated for a nervous condition, the Debtors' residence was being foreclosed, and Glynn's employer offered him more money if he would stay. Additionally, there was no one available to watch the Debtors' disabled relative or their son, and the Debtors could not afford to pay a babysitter, nor could they afford to take time off from work and still pay their monthly expenses while in school.

14. Glynn Simons is currently employed as a laborer at Chas. G. Buchy Packing Company. His average gross monthly wage is $1,430.00, and his net monthly wage is $1,235.00.

15. Marilyn Simons is currently unemployed. She has made the following efforts to obtain employment: kept in touch with her former employer, placed job applications with Even–Flo, Tool & Die Mfg., and P & R Products, and filled out an application at the unemployment office.

16. Marilyn Simons' prior employment history is as follows:

Nurses aide at Piqua Manor Nursing Home from 1975–1976, pay rate was minimum wage, duties included patient care, left because of illness and required surgery;

Sales representative at Awards Division in Highland, Texas from 1980–1981, telephone and sales, pay rate $3.50 per hour, left because moved back to Ohio;

General laborer at Buchy's Packing Co. from 2/14/89—3/31/89, pay rate $4.85 per hour, laid off for lack of work;

Laborer at Ken Koate from 8/15/89–10/13/89, pay rate $4.25 per hour, laid off for lack of work.

17. The following individuals reside with the Debtors: a 16 year old son who earns no income and a 31 year old disabled relative who earns an average monthly income of $200.00, receives Social Security payments of $229.00 per month, and SSI payments.

18. Neither the Debtors nor their son suffer from any physical or mental disability.

19. Glynn Simons has health insurance for his family through his employment.

20. The Debtors have reaffirmed a debt to Star Bank which obligates the Debtors to make monthly payments in the amount of $249.70, and have reaffirmed a debt with Credithrift of America, obligating the Debtors to make a monthly payment in the amount of $49.92.

21. The Debtors' monthly budget as listed in their bankruptcy schedules sets forth the following expenses: rent or home payment–$325, utilities–$293, auto insurance–$100, auto–$249.70, Credithrift (furniture)–$49.92, transportation–$90, food–$433.33, clothing–$100, medical, dental and medicines–$75, newspapers, periodicals, and books–$7. These expenses total $1722.95.

## CONCLUSIONS OF LAW

At the outset the Court notes that the facts are uncontroverted, thus the issues presented are capable of resolution as a matter of law pursuant to Bankruptcy Rule 7056 pertaining to summary judg-

ment. *Matter of Sams,* 106 B.R. 485, 489 (Bankr.S.D.Ohio 1989).

■ The Debtors seek a determination that their student loans are dischargeable pursuant to 11 U.S.C. § 523(a)(8)(B). Section 523(a)(8)(B) provides that a debtor may obtain a discharge of a student loan obligation if it is established that payment of the obligation will create an undue hardship. It is the debtor who bears the burden of proof in establishing that undue hardship exists. *In re D'Ettore,* 106 B.R. 715, 718 (Bankr.M.D.Fla.1989); *In re Conner,* 89 B.R. 744 (Bankr.N.D.Ill.1988).

■ The Bankruptcy Code does not define the meaning of undue hardship; accordingly, courts have developed several approaches in interpreting this statutory phrase. An early approach, which still retains vitality, was enunciated in *In re Johnson,* 5 B.C.D. 532 (Bankr.E.D.Pa.1979). In *Johnson,* the court developed a progressive three-tiered analysis consisting of the mechanical test, the good faith test, and the policy test. The debtor must sustain the burden of proof at each tier of analysis. The mechanical test requires inquiry into the debtors' current income and employment, future employment and income prospects, education and work skills, family support responsibilities, and health of the debtors. *In re Frech,* 62 B.R. 235, 240 (Bankr.D.Minn.1986). The good faith test requires that the debtors demonstrate that they are minimizing their expenses and maximizing their resources through their education, skills, and efforts to obtain employment. *In re Erickson,* 52 B.R. 154 (Bankr.D.N.D.1985). Under the policy test the court "considers the amount and percentage of the debtor's indebtedness which is represented by the student loans and the benefit derived from the education received." *In re Albert,* 25 B.R. 98, 101 (Bankr.N.D.Ohio 1982).

A similar three-part analysis was expressed in *Brunner v. New York State Higher Educ. Services,* 831 F.2d 395, 396 (2nd Cir.1987). Under the Second Circuit's standards the debtor must demonstrate: (1) that based upon his current income and expenses he would be unable to maintain a minimal standard of living; (2) that the present financial circumstances were likely to persist; and (3) that good faith efforts were made to repay the loans.

In striving to develop a more objective approach in determining whether payment of the student loan would create undue hardship, the court in *In re Bryant,* 72 B.R. 913 (Bankr.E.D.Pa.1987), adopted a test using the federal poverty guidelines.

It might be contended that excepting student loans from discharge, on the basis of income at or beneath the poverty line, in the absence of "unique" or "extraordinary" circumstances, is too harsh a test for debtors. However, we do not believe that the definition of "undue hardship" so as to allow the discharge of student loan obligations in Chapter 7 cases should be interpreted liberally, given that debtors may obtain the complete discharge of student loan obligations by filing a Chapter 13 petition instead of a Chapter 7 petition. The discharge provisions of Chapter 13, which are set forth in 11 U.S.C. § 1328(a), make it apparent that completion of payments under a confirmed plan will permit the discharge of debts provided for in the Plan which are otherwise non-dischargeable under Chapter 7. *Id.* at 917

Recently, in *In re Correll,* 105 B.R. 302 (Bankr.W.D.Pa.1989), the court, adopting a less stringent standard, rejected poverty level and minimum standard of living guidelines, and instead focused the analysis on the general legislative intent behind the Code to provide the debtor with a fresh start while preventing abuses under § 523(a)(8).

Hesitant to accept any one test or analysis as a sole approach to determining undue hardship, the court in *Matter of Coleman,* 98 B.R. 443, 451 (Bankr.S.D.Ind.1989) stated that an "undefined and illusive concept such as 'undue hardship' should result from a fact-sensitive analysis based on the totality of the circumstances distinguishable from other cases based on the debtor's own peculiar facts and circumstances."

The foregoing authorities exemplify the difficulty courts have had in articulating standards to be used in determining whether or not the debtor has proven undue hardship. The attempts to articulate bright line standards have proven unsatisfactory. Accordingly, in the absence of further legislation or binding appellate authority, this Court concludes that an evaluation of all the elements urged by the foregoing authorities must be considered in determining whether or not undue hardship exists. This Court further notes that although assertions of undue hardship present issues that are frequently repetitive, they are seldom identical. As a result, each assertion of undue hardship must be examined on the facts and circumstances unique to each specific bankruptcy proceeding. Therefore, in examining this proceeding the Court will consider: the Debtors' current income and employment, future income and employment prospects, current and future expenses, education, work skills, employment history, support responsibilities, health, poverty level standards, and evidence of intent to abuse the bankruptcy system.

 The Debtors have a net monthly income of $1,235, with only Glynn Simons being presently employed. Additionally, the Debtors receive $25 per week in child support for the 16 year old son and $225 per month as guardians of their disabled relative. Adding up the Debtors' sources of income, the Court finds that the Debtors' total net monthly income is $1560. The Debtors' schedules list $1,722.95 per month in expenses, creating a monthly budget deficit in the amount of $162.95. It is noted that although the Debtors have a monthly deficit, their yearly income is approximately $6,000 greater than the 1990 Poverty Income Guidelines for a family unit of four, which is set at $12,700 gross income. Federal Register, Volume 55, Number 33, page 5665. Notwithstanding the fact that the Debtors' current level of income does not presently allow for repayment of their student loans, the Debtors must prove not only that payment would be a hardship at the time of bankruptcy, but that their financial situation would not improve in the foreseeable future. *Matter of Craig*, 64 B.R. 854 (Bankr.W.D.Pa.1986). It is foreseeable that in the future these Debtors will be able to repay their student loan obligations. In evaluating the Debtors' future financial prospects, there is no evidence to demonstrate that Glynn Simons' income will decrease. Further, although Marilyn Simons is currently unemployed, she is capable of working and has demonstrated a history of employment.

The Court has also considered the Debtors' health. Neither Debtor suffers from any physical or mental disability which could adversely affect their employment, or which might create health-related expenses.[1] Although the Debtors care for a disabled relative, the Debtors' monthly budget includes expenses related to her care. It is further noted that although this dependent is not self-supporting, she is presently employed and receives Social Security payments. Additionally, as the Debtors' 16 year old son reaches the age of majority, the Debtors will no longer have a legal obligation for his support. Consideration must also be given to the fact that payment of one of the Debtors' reaffirmed debts, forty-nine dollars and ninety-two cents ($49.92) per month, will end in approximately four months. Completion of payment of this obligation will allow this currently budgeted sum to be applied to the Debtors' student loan debt, as the Foundation has offered to reduce the repayment amount to $50 per month. The Court concludes that the Debtors' have failed to meet their burden of proving undue hardship, pursuant to § 523(a)(8), and thus the student loan obligations owed to the Foundation are determined to be exceptions to the Debtors' discharge.

 The Foundation has also requested that it be awarded its reasonable attorneys' fees and costs of collection. In Ohio, stipulations in promissory notes providing for the payment of attorneys' fees, arising

---

1. Although the parties stipulated that in the past Marilyn Simons suffered from a nervous condition, it was further stipulated that she currently suffers from no physical or mental disability.

in connection with the failure to pay the principal and interest balance at maturity, are contrary to public policy and are void. *Federal Dep. Ins. Corp. v. Timbalier Towing Co.*, 497 F.Supp. 912, 929 (N.D.Ohio 1980) (quoting *Miller v. Kyle*, 85 Ohio St. 186 (Ohio 1911)). Moreover, under the "American Rule", the Court is prevented from making an award of attorneys' fees to a prevailing party in the absence of specific statutory authority. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). No provision exists for the granting of attorneys' fees in proceedings brought pursuant to 11 U.S.C. § 523(a)(8)(B). Accordingly, the Foundation's request for attorneys' fees is denied.

The obligations due the Foundation under the First Note, Second Note, Third Note, and Fourth Note are, pursuant to § 523(a)(8)(B), exceptions to the Debtors' discharge. Judgments in favor of the Foundation against the plaintiffs are simultaneously entered.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.