In re Cynthia A. EVANS, Debtor.

Cynthia A. EVANS, Plaintiff and Counterclaim Defendant,

v.

HIGHER EDUCATION ASSISTANCE FOUNDATION, Defendant and Counterclaimant.

Bankruptcy No. 2–90–07767.
Adv. No. 2–91–0047.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 12, 1991.

Robert J. Morje, Columbus, Ohio, for debtor/plaintiff/counterclaim defendant.

Stephen A. Santangelo, Weltman, Weinberg & Associates, Columbus, Ohio, for defendant/counterclaimant.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Findings of Fact*

Cynthia A. Evans, the plaintiff, filed a petition and plan under Chapter 13 of the Bankruptcy Reform Act of 1978, as amended on November 19, 1990. Her plan, approved by this Court's order of February 14, 1991, is of 50 months duration and pays a dividend of 25 percent to holders of unsecured claims.

Evans, 38 years of age, graduated from high school in 1972 and married shortly thereafter. She and her husband divorced in 1982. Under the terms of the divorce decree, she was awarded custody of the couple's daughter; her husband received custody of their son. The daughter is presently 18 years of age and the son 15. Evans receives no alimony or child support. Evans supports her son even though her former husband has legal custody. Her former husband lives in North Carolina and is unemployed.

Evans was a housewife during her ten years of marriage. Following the divorce she obtained part-time, minimum-wage employment as a cook at a Holiday Inn. Evans next obtained a position as a cook at McDonald's. Evans has worked at McDonald's for the past ten years and advanced to the position of manager. She is paid $6.65 hourly, or approximately $1,000 monthly, but holds no hope for further advancement or increased compensation.

Approximately three years ago, Evans attempted to make a career change. Believing there were opportunities for persons with computer, word-processing, and secretarial skills, she enrolled as a student at the Lawton Institute of Technology. Unable to afford tuition for the nine-month program, Evans applied for and obtained from the Higher Education Assistance Foundation ("HEAF") a loan in the amount of $4,000.

Lawton was a trade school, purporting to provide training in the use of computers and word processors, as well as general secretarial skills. Lawton also represented that it could place its graduates in well-paying positions as secretaries and computer operators. However, as Evans quickly ascertained, these were misrepresentations. Lawton's instructors, for example, had little or no training, and were learning the use of computers and word processors at the same time they sought to teach others. Nor was there any service for the placement of students in computer or word-processing jobs; instead, Lawton referred students to low-paying, readily available, unskilled jobs in the fast-food industry.

Evans regularly attended classes at Lawton and received a certificate of completion.

However, she acquired no skills or knowledge in the operation of computers or word processors, and no secretarial skills, by virtue of this training. Evans has attempted repeatedly to secure positions in these fields, but realizes now she lacks the necessary skills for such employment.

Evans supports herself and two children on a gross annual income approximating $12,000. Her lifestyle is spartan. Evans owns no car, relying on bus service and friends for all transportation. Her monthly rent and food budget are $375 and $125, respectively. Evans' monthly clothing allowance is $20. She has no money budgeted for life or health insurance, laundry, religious or charitable donations, or recreation. Evans also has no retirement benefits.

Evans suffers from a heart disorder which manifests itself in left-side numbness and severe chest pains. Evans' physician has advised her to quit McDonald's and secure less stressful work. Against this advice, Evans is searching for a second job to help pay her health expenses and those of her daughter. Her monthly budget of $65 for medicine and drugs does not cover her medical and drug expenses nor those of her daughter, who has a similar heart disorder. Evans has deferred needed surgery for her daughter until she has sufficient financial resources.

By her complaint, Evans seeks to have the portion of her debt to HEAF not provided for in the Chapter 13 plan declared dischargeable on the ground that repayment of such portion would pose an undue hardship to herself and her children. Evans' debt to HEAF, with interest accruals and other costs, now exceeds $5,500. HEAF disputes that repayment of the debt would constitute an undue hardship and counterclaims for a judgment of nondischargeability in the amount of $5,548.40 as of March 9, 1991, exclusive of costs and accruing interest.

## II. *Conclusions of Law*

The Court has jurisdiction in this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (b)(2)(I).

■ As soon as practicable after completion by the Chapter 13 debtor of all payments under the plan, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed, except any debt "of the kind specified in paragraph (5) or (8) of section 523(a) or 523(a)(9) of this title ..." 11 U.S.C. § 1328(a)(2). The reference in § 1328(a) to § 523(a)(8) was added to the Bankruptcy Code as a part of the Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508 (November 5, 1990) and made applicable to cases filed after the enactment date. Thus, it applies to Evans' case. At the time Evans' case was filed, § 523(a)(8)(B) provided that a discharge of debts shall be granted except from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

. . . .

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.[1]

The debtor bears the burden of proof in establishing that undue hardship exists. *D'Ettore v. Devry Institute of Technology (In re D'Ettore)*, 106 B.R. 715, 718 (Bankr. M.D.Fla.1989); *Conner v. Illinois State Scholarship Commission (In re Conner)*, 89 B.R. 744, 747 (Bankr.N.D.Ill.1988).

Section 523(a)(8)(B) permits the Court to discharge an otherwise nondischargeable educational loan if excepting the debt from discharge will impose an undue hardship on the debtor or the debtor's dependents.

---

1. Section 523(a)(8) was broadened by the Crime Control Act of 1990, Pub.L. 101–647 (November 29, 1990). The amendments to § 523(a)(8) took effect 180 days after the enactment date of the Act and do not apply to the instant action. Moreover, the provisions of § 523(a)(8)(B) were not amended.

Whether a hardship exists within the bounds of the statute must be determined by the facts of each case.

Although neither the Bankruptcy Code nor its legislative history defines the meaning of "undue hardship," "[i]t is almost universally accepted that the undue hardship referred to at Section 523(a)(8) contemplates unique and extraordinary circumstances ..." The statute refers to *undue* hardship and the mere fact that repayment of an educational loan imposes *a* hardship is insufficient to permit discharge of the loan. "Indeed, most or possibly all debtors could make a 'garden variety' hardship claim in good faith." ... As a result, bankruptcy courts have narrowly construed § 523(a)(8)(B) of the Bankruptcy Code....

*Aretta Foreman v. Higher Education Assistance Foundation (In re Aretta Foreman)*, 119 B.R. 584, 587 (Bankr.S.D.Ohio 1990) (citations omitted).

In the absence of a firm definition of undue hardship, courts have developed a three-part test to determine its existence. *See, e.g., Simons v. Higher Education Assistance Foundation, et al. (In re Simons)*, 119 B.R. 589 (Bankr.S.D.Ohio 1990); *Gearhart v. Clearfield Bank and Trust Co. (In re Gearhart)*, 94 B.R. 392 (Bankr. W.D.Pa.1989); *Cahill v. Norstar Bank of Upstate New York (In re Cahill)*, 93 B.R. 8 (Bankr.N.D.N.Y.1988); *Courtney v. Gainer Bank (In re Courtney)*, 79 B.R. 1004 (Bankr.N.D.Ind.1987); *Lohman v. Connecticut Student Loan Foundation (In re Lohman)*, 79 B.R. 576 (Bankr.Vt.1987); *Marion v. Pennsylvania Higher Education Assistance Agency (In re Marion)*, 61 B.R. 815 (Bankr.W.D.Pa.1986); *Binder v. U.S. Dept. of Education (In re Binder)*, 54 B.R. 736 (Bankr.N.D.1985).

Under the three-part test, the Court's inquiry progresses through three stages which are commonly termed the "mechanical test," the "good faith test," and the "policy test." The Debtor bears the burden of proof on each test; if the Court finds against the Debtor at any particular stage, its inquiry ends and the debt will not be dischargeable in bankruptcy.

*North Dakota State Board of Higher Education v. Frech (In re Frech)*, 62 B.R. 235, 240 (Bankr.D.Minn.1986).

■ The mechanical test requires an inquiry into "a variety of factors in the debtor's vocational profile, including his current employment and income, future employment and income prospects, educational level and work skills, health, family support responsibilities, and the practical marketability of his work skills." *Id.* In essence, the debtor must demonstrate that her income and other financial resources will not be sufficient to maintain a minimal standard of living for the foreseeable future if she were under a continuing obligation to make some payment on the educational loan in question.

■ If the debtor satisfies the mechanical test, she must then meet the good faith test by demonstrating she is actively minimizing her current household living expenses and maximizing personal and professional resources. This test requires a showing that the debtor is making a strenuous effort to maximize her personal income within the practical limitations of her vocational profile. *Frech*, 62 B.R. at 241.

■ The third step is the policy test, requiring the court to determine whether allowing discharge of a given educational loan would further the policy behind the enactment of § 523(a)(8)(B). Congress' principal concern in this regard was the perception that some debtors abused the bankruptcy process by filing solely or primarily to discharge large government-incurred student loan obligations when bankruptcy relief was not actually needed. H.R.Rep. No. 595, 95th Cong., 1st Sess. 133 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The Court also should consider as a part of this test the amount and percentage of the debtor's indebtedness which is represented by the subject educational loan and the benefit derived from the education received. *Albert v. Ohio Student Loan Commission (In re Albert)*, 25 B.R. 98, 101 (Bankr.N.D.Ohio 1982).

Various other tests have been articulated by the courts. In *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987), the Second Circuit Court of Appeals articulated a three-part test for demonstrating "undue hardship": (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loan; (2) that additional circumstances exist indicating that the present financial circumstances are likely to persist for a significant portion of the repayment period of the loan; and (3) that the debtor has made good faith efforts to repay the loan. The bankruptcy court in *Bryant v. Pennsylvania Higher Education Assistance Agency (In re Bryant)*, 72 B.R. 913, 915 (Bankr.E.D.Pa.1987), in attempting to inject an "element of objectivity" into the calculus, proposed that the debtor's income and resources be analyzed first in relation to the federal poverty guidelines established by the United States Bureau of the Census. If the debtor's income is below or close to the guideline, the lender can prevail only by establishing that circumstances exist which render these guidelines unrealistic. It has also been stated that Congress did not intend "a fresh start under the Bankruptcy Code to mean that families must live at the poverty level in order to repay educational loans." *Correll v. Union National Bank of Pittsburgh (In re Correll)*, 105 B.R. 302, 306 (Bankr.W.D.Pa. 1989).

■ In a characteristically well-reasoned opinion, Judge Waldron of this Court, after noting the existence of the various judicially constructed tests, rejected any attempt to establish or apply "bright line" standards. Instead, he articulated an approach that includes "an evaluation of all the elements urged by the foregoing authorities ... in determining whether or not undue hardship exists." *Simons v. Higher Education Assistance Foundation, et al.*, 119 B.R. at 593. Such an approach requires a fact-sensitive inquiry into the unique facts and circumstances of each bankruptcy case. This Court concludes that Judge Waldron's approach is particularly sound

and, thus, shall be applied in this and future cases.

■ Applying the "mechanical test," it is evident that Evans' financial resources during the foreseeable future will not be sufficient to support her or her dependents above a subsistence level of living and still enable her to repay the loan obligations. The student loan requires payment of approximately $60 per month and will take approximately 11½ years to be satisfied in full. Evans' net monthly income of $818.96 and monthly expenses of $766 (Exh. A) leave no money in the debtor's budget to pay her educational loan without sacrificing the bare essentials of everyday living. Evans thus satisfies the mechanical test.

Evans also meets the good faith test. Evans is an honest debtor who has sought and obtained much-needed relief in this Court. Her *bona fides* in seeking bankruptcy court relief and in filing this complaint are unquestioned.

As for the policy test, courts have stated repeatedly that the Bankruptcy Code is primarily designed to give the honest debtor a fresh start in life. There is not one scintilla of evidence, nor is there a suggestion, that Evans is either dishonest or is attempting to abuse the letter or spirit of the Bankruptcy Code. She simply obtained a loan of $4,000 for a trade-school program which did not give her the necessary skills to obtain employment. Having received no marketable skills from Lawton, Evans finds herself attempting to survive under the same standard of living that existed prior to the subject educational loan and the completion of Lawton's program, and is unable to maintain more than a minimal existence for herself and her children. Evans is not the type of debtor with which Congress was most concerned in enacting the general bar to the discharge of educational loans.

■ The Court also has examined all other circumstances which are of record. Although there is no evidence concerning the current federal poverty guidelines, Evans' gross income of approximately $12,000 for a family of three certainly falls near or

below that standard. This Court agrees with the *Correll* court, that a debtor need not be living at the poverty level to obtain a discharge of educational-loan obligations. Evans nonetheless is maintaining a minimal standard of living which likely will persist indefinitely. Plainly, Evans has no financial resources to repay the subject loan now or in the future. The loan thus poses an undue hardship to Evans and her dependents.

In conclusion, Evans is entitled to discharge her obligations to HEAF pursuant to the subject educational loan. Accordingly, the relief requested in her complaint is hereby GRANTED and her loan obligation to HEAF discharged. HEAF's counterclaim is DENIED. Judgment shall be entered in favor of the plaintiff and against the defendant on the complaint and counterclaim.

IT IS SO ORDERED.