In re Kyle T. BERTHIAUME, Deborha L. Craig–Berthiaume, Debtors.

Kyle T. BERTHIAUME, Deborha L. Craig–Berthiaume, Plaintiffs.

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AUTHORITY, et al., Defendants.

Bankruptcy No. 3–90–02305(3)11. Adv. No. 3–90–0213.

United States Bankruptcy Court, W.D. Kentucky.

Feb. 28, 1992.

Bruce F. Boldt, Jr., Louisville, Ky., for plaintiffs.

Rosalie F. Morrison, Frankfort, Ky., for defendant, KHEAA.

Bonnie Walker–Armstrong, Asst. University Counsel University of Louisville, Louisville, Ky., for University of Louisville.

## MEMORANDUM–OPINION

DAVID T. STOSBERG, Bankruptcy Judge.

This adversary proceeding for determination of undue hardship in regards to the discharge of student loans was filed by the plaintiff on July 27, 1990. On September 3, 1991, this case was tried before the Court and thereafter the parties filed post-trial memoranda. The plaintiff, Kyle T. Berthiaume, his wife, Deborha L. Craig–Berthiaume, were the only two witnesses. The parties had previously stipulated that the plaintiff, Deborha L. Craig–Berthiaume, borrowed $4,500.00 in Kentucky Higher Education Assistance Authority guaranteed student loans from the L & N Federal Credit Union to attend the University of Louisville between September, 1987 and May, 1990. These loans accrue interest at 8% per annum and became due for repayment on December 1, 1990 with scheduled monthly payments of $54.60. The plaintiff has made no payments on this amount and the balance due as of November 18, 1991 is $4,706.81. Mrs. Craig–Berthiaume also borrowed $2,500.00 in Kentucky Higher Education Assistance Authority insured supplemental loans for students from the Kentucky Higher Education Student Loan Corporation to attend the University of Louisville during the 1987–88 academic year. This loan accrues interest at the rate of 11.49% per annum and became due for repayment on October 5, 1987, with rescheduled payments of $50.00 per month. She had submitted six payments totalling $660.50 between January 4, 1988 and March 10, 1989. The balance due on this loan as of November 18, 1991 is $2,912.71. The plaintiff, Deborha L. Craig–Berthiaume, also borrowed $6,115.00 in Kentucky Higher Education Assistance Authority guaranteed student loans and $4,665.00 in Kentucky Higher Education Assistance Authority insured supplement loans for students from Liberty National Bank and P & C Educational Loan Center. The defendant, Kentucky Higher Education Assistance Authority, has denied payment of insurance claims on these loans and does not currently hold any interest in these loans.

The plaintiff, Kyle Berthiaume, is indebted, as a result of educational loans, to the Bank of Horton for $4,021.00 and to the Student Loan Servicing Center for $4,088.00.

Deborha Craig–Berthiaume and her husband, Kyle Berthiaume, are both 24 years old and they have one child, born January 6, 1991, who resides with them. Kyle Berthiaume is employed full time as a router with Sysco Louisville Food Services Company. Deborha Craig–Berthiaume was last employed in February, 1991 for fifteen to twenty hours per week as a cashier at K–Mart. Her past employers include the U.S. Army Reserves, Burns International Security Service, Deltatemp, Inc., Computer Systems, Inc. (Humana Corporation), Lees Famous Recipe Country Chicken, University of Louisville History Department and Winn Dixie Louisville, Inc.

Mrs. Berthiaume is currently unemployed and has no income while Mr. Berthiaume earned wages of $21,555.26 in 1989; $29,137.42 in 1990; and $7,522.05 in the first quarter of 1991 which would give him approximately $30,000.00 for last year. The first quarter of 1991 the plaintiff had an average monthly salary of $1,880.51. According to the budget submitted in the records and testimony, he had a net income of approximately $1,300.00. Mr. Berthiaume testifies that he makes voluntary contributions to a 401–K retirement plan and approximately $65.00 a month is deducted for the company stock purchase plan. He also testified that all insurance payments for the family, other than automobile insurance payments, were deducted from his paycheck.

The testimony of the plaintiff, Deborha Craig–Berthiaume, established that she had medical problems which restricted her ability to be employed. She has been diagnosed as being dyslexic which is a permanent disabling condition that severely hin-

ders her ability to obtain employment. She has attempted to work as a secretary but the dyslexia restricts her typing speed to a maximum of 30 words per minute. She was also recently diagnosed as manic depressive and when she becomes depressed or sick she starts writing backwards. Even though the manic depression can be controlled by the prescription drug, Lithium, the dyslexia is a permanent condition which may be treated but never cured. Her bouts of depression and dyslexia seriously handicapped her in doing her academic work at the University of Louisville and ultimately required her to drop out of school. Her mother-in-law is temporarily living with them because Mrs. Berthiaume cannot handle the child care and household duties.

Mrs. Berthiaume also has a mitral valve prolapse and regurgitation which is a congenital heart condition. She has a defect with one of the two valves in the heart which causes one of her heart valves to open the opposite way from which it is intended to open to circulate her blood. When this happens with the heart valve, the experience is extremely painful. She does take medication to alleviate the pain but the medication cannot correct the condition. The mitral valve prolapse and regurgitation causes severe pain but it causes oxygenated blood to combine with unoxygenated blood. This results in a permanent insufficiency of oxygen and energy which results in her being constantly weak. She has asthma which becomes active when she tries strenuous physical activity or when she works under stressful conditions and also suffers from arthritis in her knee joints.

Mrs. Berthiaume was recently hospitalized for manic depression at Lincoln Trail Hospital during the summer of 1991. Her most recent hospitalizations were from August 2 to August 9, 1991 and from August 16 until the date of trial. She controls her antidepressant with medication which includes lithium, xanex and halodol.

Mrs. Berthiaume testified that her continuing medical conditions are financially debilitating. She takes Beconase for allergies, Ventolin for asthma, Ceclor for bronchitis, Seldane for allergies and Tenormin for mitral valve prolapse condition and regurgitation in addition to her medications for manic depression. Her health insurance does not fully cover the office visits and medication and can seriously affect their monthly budget. Mrs. Berthiaume advised the Court that she was applying for social security and disability benefits but there was no certainty as to if and when those benefits would be collected.

Debtors monthly budget as listed in the Answers to Interrogatories sets for monthly expenses in the range of $1,572.52 to $1,593.52 and sets forth the following expenses:

| | | |
|---|---|---|
| Rent | — | $359.00 |
| LG & E | — | $ 40.00 to $60.00 |
| Telephone | — | $ 50.00 |
| Vet and pet food | — | $ 30.00 |
| Gas & Oil | — | $172.00 |
| License tag | — | $ 1.00 |
| Automobile repairs | — | $172.92 |
| Clothing | — | $ 45.00 |
| Entertainment | — | $ 40.00 |
| Food | — | $215.00 |
| Doctors | — | $ 75.00 |
| Dentists | — | $ 25.00 |
| Prescription drugs | — | $ 10.00 |
| Eyeglasses | — | $ 15.00 |
| Automobile liability ins. | — | $ 37.50 |
| Hospitalization insurance | — | $ 36.00 |
| Life Insurance | — | $ 24.00 |
| Laundry | — | $159.10 |
| Auto (personal property tax) | — | $ 5.00 |
| Newspaper | — | $ 6.00 |
| Beauty & barber shop | — | $ 15.00 |
| Baby miscellaneous | — | $ 30.00 |

The testimony showed that the automotive repair expense was for a repair bill in the amount of $2,075.00 which had been divided into twelve monthly payments. Mrs. Berthiaume also testified that vet and pet food of $30.00 a month was for cat insurance and her rent was now $200.00 instead of the $359.00. She also testified that the laundry expense of $159.10 would have to be adjusted because that was for washing their clothes at a public laundromat but they had recently purchased a washer and dryer which would significantly decrease that expense. There were no other extravagances in the debtors' budget

and some estimates such as the food and prescription drugs could be too low. It seems to this Court that Mr. Berthiaume's average net monthly income should be approximately $1,400.00 and the debtors necessary monthly expenses are in the $1,250.00 to $1,350.00 range.

The debtors seek to have the indebtedness arising out of their student loans held dischargeable under the exceptions set forth in U.S.C. § 523(a)(8)(B), which provides in pertinent part that:

(a) A discharge under §§ 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

■ In contrast to the usual dischargeability cases, the debtor seeking the determination that a student loan is dischargeable bears a burden of demonstrating undue hardship in repaying the student loan. *In re Foreman*, 119 B.R. 584 (Bkrtcy., S.D.Ohio 1990); *In re Evans*, 131 B.R. 372 (Bkrtcy., S.D.Ohio 1991). Generally, a creditor seeking judgment of nondischargeability bears the burden of proof through a preponderance of the evidence. *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The exhibits and testimony of the plaintiffs establishes that their loans were for educational purposes and guaranteed by a governmental unit and that payments were due within a five year period.

■ Undue hardship is not defined in the Code and is a term of art to be interpreted at the discretion and judgment of the Court. The approach in determining whether undue hardship exists in justifying the discharge of a government guaranteed educational loans requires an extensive inquiry into the unique facts and circumstance of each bankruptcy case, rather the

application whiteline standards. *In re Evans, supra.* Therefore, in examining this situation, the Court will consider household and family expenses, education, work skills, employment history, support responsibilities, health, poverty level standards, and any evidence which would exhibit an intent to abuse the bankruptcy system.

■ Courts have struggled in their attempts to apply the application of the undue hardship concept. Several Courts have adopted a tripartite test for determining whether the debt is discharged due to undue hardships. The tests termed in order; the mechanical test, the good faith test and policy test. The mechanical test requires a debtor to show that his financial resources in the foreseeable future will not be sufficient to enable the debtor to live at a subsistence level while the debtor repays the debt obligation. *In re Johnson*, 5 BCD 532 (1979). Educational loans are usually paid in small monthly payments over a relatively long period of time, typically ten years. Consequently, a debtor must generally show that his financial situation will not permit a small payment and is unlikely to improve over the next ten years or so. *In re Bey*, 95 B.R. 376 (Bkrtcy., W.D.Pa.1989).

The second phase of analysis is the good faith test in which it is determined that the debtor has made a bonafide attempt to find a good paying job, be sincere in the attempt to maximize his financial resources and minimize his expenses. *In re Frech*, 62 B.R. 235 (Bkrtcy., D.Minn.1986).

The third and final phase of the analysis is the policy test which requires the Court to ensure the debtor's motivation of filing the bankruptcy and ascertain whether the attempt to discharge the loan constitutes the sort of abuse Section 523(a)(8)(B) was enacted to prevent. This may be determined by the benefit the debtor derived from the loans and the percent of student loans debt compared to the total debt. This case involves two debtors and this Court will analyze each separately.

■ The debtors cite *In re Norman*, 25 B.R. 545 (Bkrtcy., S.D.Cal.1982), *In re Dyer*, 40 B.R. 872 (Bkrtcy.E.D.Tenn.1984),

and *In re Alliger,* 78 B.R. 96 (Bkrtcy., E.D.Pa.1987) in support of their argument that the debts of Mrs. Berthiaume should be discharged. These cases dealt with medical problems, including emotional illnesses that should be considered a significant factor in determining the dischargeability of a student loan. The *Alliger* case is significant in that the Court found that unless the debtor has made a showing which would support a determination that undue hardship would exist if repayment of educational loans required, the burden of proof shifts to the educational loan creditor to present some evidence to rebut the debtor's case in support of finding that the educational loan is nondischargeable. *In re Alliger, supra* at 99.

The plethora of permanent health problems severely hampers Mrs. Berthiaume's ability to maintain permanent employment. Most of her medical problems are treatable with some type of prescriptive medication but one has to wonder the effect all of these medicines have on her ability to maintain a full time job. The defendants put forth no evidence to rebut plaintiff's inability to maintain employment. The creditors did not give any indication as to what employment would be suitable for a person who is under the influence of four to six prescription medicines. It was stated that she could receive some type of benefits in the future but the Court must also consider the likelihood of an increase in the medical expenses in light of the low amount stated in the debtors' budgets.

■ It is not necessary that a debtor be living at the poverty level to obtain a discharge of educational loan obligations. *In re Evans, supra* at 377. At best, Mrs. Berthiaume will maintain a minimal standard of living which will likely persist indefinitely due to the extent of her medical problems. The cat insurance is the only extravagance in the budget and the other necessary expenses seem to be held at a minimum.

■ On the other hand, the plaintiff, Kyle Berthiaume, has not exhibited sufficient undue hardship justifying the discharge of the guarantee educational loan.

The undue hardship so as to allow the discharge of a student loan must be long term and does not include "garden-variety hardship" or "unpleasantness". *In re Cahill,* 93 B.R. 8 (Bkrtcy.N.D.N.Y.1988). It is obvious that Mr. Berthiaume has obtained the benefit from his educational experiences and is ably employed with a job that will provide him with some type monetary increase in the foreseeable future. A hard look at his income and budgetary expenses would allow him to pay at least $65.00 or more per month towards the payment of his educational loans. It is not unreasonable to think that Mr. Berthiaume could repay the amount of his student loans over the next five to ten years without subjecting his family to undue hardship.

■ The University of Louisville and KHEAA addressed in their arguments that this did not have to be an "all or nothing" choice and that an alternative remedy could be fashioned by this Court. The Court agrees it can use its equitable powers to patch remedies involving partial discharge. Accordingly, this Court finds that loans of the plaintiff, Kyle T. Berthiaume, in the amount of $4,021.00 and $4,080.00 are nondischargeable, in the amount due and owing when the petition was filed. The Court also finds that the plaintiff is able to pay $65.00 a month on his student loans. Payments should start immediately and increase to $100.00 beginning January, 1994 until the debt is paid in full.

This Memorandum–Opinion constitutes Findings of Fact and Conclusions of Law and an Order consistent herewith shall be filed immediately.

### ORDER

This matter having come before the Court for trial and the parties having submitted their trial memoranda, and the Court being sufficiently advised,

IT IS HEREBY ORDERED that the educational loans of the plaintiff, Deborha L. Craig–Berthiaume are hereby DISCHARGED.

IT IS FURTHER ORDERED that the $4,021.00 and $4,080.00 educational loans

of Kyle T. Berthiaume are nondischargeable. He shall begin making monthly payments of $65.00 a month immediately and payments shall increase to $100.00 in January, 1994 and continue until the loan amounts are paid in full.