In re Deborah A. LOGAN, Debtor.

Deborah A. Logan, Plaintiff,

v.

N.C. State Education Assistance Authority, et al., Defendants.

Bankruptcy No. 99–10718(3)7. Adversary No. 99–1050.

United States Bankruptcy Court, W.D. Kentucky.

Dec. 12, 2000.

Philip Huddleston, Bowling Green, KY, for plaintiff.

R. Bruce Stith, III, Lexington, KY, Catherine C. Woodard, Research Triangle Park, NC, for defendants.

### MEMORANDUM—OPINION

JOAN LLOYD COOPER, Bankruptcy Judge.

This matter came before the Court for trial on November 15, 2000 on the Complaint of Debtor/Plaintiff Deborah A. Logan ("Professor Logan") to have student loans owed to Defendants North Carolina State Education Assistance Authority ("the Authority"), University of North Carolina ("the University"), and New York State Higher Education Services Corporation ("NYSHESC") declared nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

The Court, having reviewed the pleadings and the evidence presented at trial and being duly advised in the premises enters its Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. 7052.

### FINDINGS OF FACT

Debtor/Plaintiff Deborah Logan ("Logan") is a 49 year old divorced mother of three children, Jacob age 20, Lauren age 18 and Zachary age 15. All three of Professor Logan's children live at home with her. Professor Logan has been divorced from the children's father since shortly after the birth of Zachary in 1985. She has raised all three children on her own with minimal support from her ex-husband. Professor Logan testified that her ex-husband agreed to pay $300.00 per month in child support, but such payments have not always been received timely. Professor Logan presented substantial evidence of the hardship she suffered in raising the three children on her own with limited assistance from her ex-husband and social services.

In a noble effort to improve her standard of living, Professor Logan determined to pursue a higher education. She attended Hamilton College in New York and based upon her explanation to officials at the college regarding her financial circumstances and her good academic record, she received a scholarship. She and the family survived on welfare and the sporadic child support payments from her ex-husband.

After her graduation from Hamilton College in 1988, Professor Logan applied and was accepted to the University of North Carolina for graduate school. It was her intent to obtain a master's degree and doctorate from UNC. She consulted with the financial aid department at UNC

and determined she was eligible for student loans.

Professor Logan attended the University of North Carolina from 1991 to 1997 and received an M.A. in English and a Ph.D. in English/Victorian Studies. During that time Professor Logan incurred student loans from the Authority, the University and NYSHESC which she used for living expenses and to finance her education. With interest, Professor Logan owes the Authority approximately $95,988.00, the University approximately $15,262.00 and NYSHESC approximately $23,719.00.

In 1997, Professor Logan, after a considerable job search, obtained a position as an Assistant Professor of English with Western Kentucky University. Her current annual income is approximately $42,000.00 with net take home pay of about $2,400.00 per month. She receives subsidized health and life insurance and retirement benefits from her employer. The evidence established that since the inception of her employment with Western Kentucky University she has received, and can expect in the future to receive, a five to six percent annual increase in her salary.

Professor Logan testified that her monthly expenses fluctuate, so she submitted four estimates of these expenses. They are as follows: $2,271.00 per month; $2,346.00 per month; $2159.00 per month; and $1,993.00 per month. These estimates include, among other things, rent of $700.00 per month, a car payment of $150.00 per month on a 1995 Saturn, clothing, utilities and food.

Upon her graduation from UNC Professor Logan realized that her student loans would become due. She began receiving statements from the Defendants and requested deferments. Her total principal debt is approximately $134,970.00. Her current total debt payment is scheduled at $1,920.00 per month. Despite receiving various payment schedules from the Defendants with minimum payments at 8% for 30 years, Professor Logan testified she was unable to meet any of these payment schedules. Plaintiff's Exhibits 12, 13, 14, 15, 16, 17, and 18 set forth various payment schedules provided to Professor Logan by the Defendants. Realizing that the Defendants were preparing to garnish her wages, she filed for relief under Chapter 13 of the United States Bankruptcy Code on May 5, 1999.

Professor Logan filed her Chapter 13 Plan and it was confirmed, but she was unable to make any plan payments. On September 1, 1999, the case was converted to one under Chapter 7 of the Code.

Professor Logan is currently on track for tenure at Western Kentucky University. In two years she will be eligible to apply for tenure. She is next eligible for an associate professorship and then a full professorship. Each change in job status involves a moderate increase in income.

Professor Logan testified that she put off certain medical treatment until she could afford the treatment. She testified that she is currently being monitored for glaucoma based upon her family history. There was no evidence that she is currently suffering from or being treated for any health condition that prevents her from employment. She testified that she occasionally suffers from migraine headaches, which are at times temporarily quite painful, but they have not interfered with her ability to work full-time as an assistant professor at WKU. There is no evidence that she is currently suffering from or is certain to contract some medical condition that prohibits her employment.

Professor Logan testified that it is her intent to "break the cycle of poverty" by financing her children's college education.

In this regard, she submitted a list of fixed expenses for attendance at WKU. See Plaintiff's Exhibit 4. She feels a moral obligation to support her children in this effort. At the current time none of her children are attending college. Her 20 year old son currently works part-time at a fast food restaurant and spends the bulk of his time pursuing a film-making career. None of the children contribute to the payment of household expenses.

### CONCLUSIONS OF LAW

■ Pursuant to 11 U.S.C. § 523(a)(8), the Court may discharge an otherwise nondischargeable loan if excepting the debt from discharge will impose an undue hardship on the debtor or debtor's dependents. Professor Logan had the burden of proving that she qualifies for a "hardship discharge." *In re Berthiaume*, 138 B.R. 516, 520 (Bankr.W.D.Ky.1992). The Sixth Circuit requires a debtor seeking a hardship discharge to demonstrate:

a. That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for himself and his dependents if forced to repay the loans;

b. That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

c. That the debtor has made good faith efforts to repay.

*Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987); *In re Cheesman*, 25 F.3d 356, 359 (6th Cir.1994); In *In re Dolph*, 215 B.R. 832, 836 (6th Cir. BAP 1998).

■ Based upon the evidence presented at trial, Professor Logan failed to demonstrate, based upon her current income and expenses, that she cannot maintain a 'minimal' standard of living for herself and her dependents if forced to repay *some portion* of the loans. The Court finds, however, that Professor Logan did establish that her current income is insufficient to maintain a 'minimal' standard of living and to repay the *entire loans* according to the repayment schedules presented by the Defendants.

■ The Court is authorized under *In re Hornsby*, 144 F.3d 433, 440 (6th Cir. 1998), to institute its own payment schedule whereby the student loans are partially discharged. Therefore, the Court determines Professor Logan must repay the loans as follows: $150.00 per month for the next 12 months with each payment to be divided in proportion to the entire debt. This results in the Authority receiving .71 of each payment or during the first year $106.50 per month, NYSHESC receiving .18 of each payment or $27.00 during the first year, and the University receiving .11 of each payment or $16.50 during the first year. After 12 months of payments at $150.00 per month, Professor Logan is to pay $300.00 per month for 24 months, with the Authority receiving $213.00, NYSHESC receiving $54.00, and the University receiving $33.00 of each payment. Thereafter, the payment shall increase to $500.00 per month for the next 96 months, with the Authority receiving $355.00, NYSHESC receiving $90.00, and the University receiving $55.00 of each payment. This results in a total payment of $57,000.00.

The Court believes this payment schedule is reasonable given Professor Logan's current and expected income from teaching, less her reasonable expenses. The total payment to all three creditors, while only approximately 42% of the total sum due without interest, is reasonable given the Debtor's past, present and expected future income, her children currently liv-

ing at home, their advancing ages and expected independence.

The Court, based upon the evidence, concludes that Professor Logan's financial picture will continue to improve annually. She has steadily received annual pay increases of 5% to 6%. There was no evidence presented that Professor Logan is in imminent danger of losing her job. In fact, she is on track for tenure and hopefully will obtain a full professorship.

■ Conversely, her expenses will decrease. She is currently supporting all three of her children, but one child is age 20 and the others will shortly obtain their majority. Professor Logan testified that she cannot repay the loans in the future because she believes it is her moral obligation to finance her children's college education. The Court notes that Professor Logan has no legal obligation to pay for her children's college education. The best thing she can do for her children is to show them by example her extraordinary accomplishments and tenacity to improve her circumstances. It is reasonable for Professor Logan to expect ongoing contributions to her household expenses from her children as they reach an age and level of maturity where they can maintain employment. It is unreasonable to expect creditors holding legitimate claims to remain unpaid to any extent while the Debtor is supporting any adult children in her home.

Professor Logan has made no payments on any of the outstanding loans. The Court notes that there was no evidence that Professor Logan was forced to take out any of these loans to pursue her educational goals. Rather, they were incurred voluntarily and provided Professor Logan with opportunities she would otherwise have been unable to achieve. The Court finds that Professor Logan did not carry her burden of proof regarding good faith efforts to pay on the loans or to work out a resolution to the debt.

Professor Logan has extraordinary talent and drive that has carried her to an esteemed and honorable position given her circumstances. Payment of the entire loan amount would be impossible for her. The Court, however, does find that Professor Logan's financial picture is brighter than it has ever been at any time in her past and that she can make the payments as set forth in this Memorandum–Opinion and still maintain a greater than 'minimal' standard of living for herself and her dependents.

### CONCLUSION

The Court enters Judgment in favor of the Defendants North Carolina State Education Assistance Authority, University of North Carolina, and New York State Higher Education Services Corporation and declares the debt of the Debtor/Plaintiff Deborah A. Logan partially nondischargeable in accordance with the findings contained herein.