**In re Katy J. McLEOD, Debtor.**

**Katy J. McLEOD, Plaintiff,**

**v.**

**DIVERSIFIED COLLECTION SERVICES, et al.
Defendants.**

**Bankruptcy No. 94–30010.
Adv. No. 94–3069.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Nov. 17, 1994.

Brian Lautar, Toledo, OH, for debtor/plaintiff.

Mike Regnier and James Rogers, Toledo, OH, for defendants.

## OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court upon Katy McLeod's ("Debtor") complaint to determine dischargeability of an educational debt of $3,000.00 (the "Loan") under 11 U.S.C. § 523(a)(8) to which Nebraska Student Loan Program, Inc. ("Lender") has filed an answer. Lender has filed a counterclaim for judgment on the note evidencing the Loan. Upon consideration of the evidence adduced at trial, the Court finds that the Debtor's complaint is not well taken and that the Loan should be excepted from discharge. The Court further finds that the Debtor is liable to Lender on Lender's counterclaim for the amount of the Loan plus interest at the contract rate.

### FACTS

The Debtor filed her petition under chapter 7 of title 11 in 1994.

The only contested issue before the Court is whether the repayment of the Loan constitutes an "undue hardship" for the Debtor. *See* Pre-trial Stipulation, dated September 26, 1994.

The Debtor seeks to discharge the Loan which financed a portion of her education as a law student at Ohio Northern University. The Debtor's monthly payment on the Loan approximates $68.68.

The Debtor is 50 years old. She has one dependent, her son, who is presently 14 years old.

The Debtor holds a B.A. degree from Ohio State University and a J.D. degree from Ohio Northern University. Although the Debtor is licensed to practice law in Ohio, she testified that she has been unable to obtain employment in the legal profession.

The Debtor presently serves as a compliance officer for the Allen Metropolitan Housing Authority, a private non-profit housing assistance corporation, on a full-time basis. The Debtor has been employed in this capacity since March, 1990. The Debtor testified that her net income approximates $1,700.00 per month.

The Debtor also testified that her son receives a monthly payment from the Social Security Administration in the amount of $549.00 (the "Social Security Check"). The Debtor testified that the Social Security Administration deducts $100.00 per month from the Social Security Check because of a previous overpayment of Social Security benefits to her son. The Debtor utilizes the Social Security Check to pay rent on a house in the Lima area (the "Rental Residence") where she presently resides with her son. The Debtor's monthly rent is $500.00.

The Debtor further testified that her son is the beneficiary of a trust which is funded with the proceeds from an insurance settlement.

The Debtor testified that she is the one-half owner of a house in Lima, Ohio (the "House"). Neither she nor her son reside in the House. The Debtor estimated the value of the House at approximately $10,000.00—$12,000.00. The Debtor testified that the House is not subject to any liens. The Debtor further testified that she has not sought to sell her interest in the House.

Certain of the Debtor's friends (the "Tenants") presently occupy the House. The Tenants pay the utility bills for the House. However, the Debtor testified that the Tenants do not pay rent on the House. The Debtor further testified that she makes the required property tax payments on the House.

Although the Debtor testified that she has experienced health problems in the past as a result of high blood pressure, the Debtor testified that this condition does not presently restrict her ability to perform her job. The Debtor further testified that her son is presently in good health, though he has experienced problems with ulcers in the past.

The Debtor provided testimony as to certain of her monthly expenses for rent, heat, telephone, automobile payments, doctor's fees, medicine, attorney fees, lawn maintenance and taxes. The Debtor also testified that she periodically pays for unexpected expenses in order to support her son, including

the recent purchase of eye glasses at a cost of $240.00.

The Debtor testified that she made efforts to repay the Loan in the past at a time when she was living with her mother. The Debtor testified that, although she has sought to make payment arrangements for the Loan, such attempts have been to no avail.

## DISCUSSION
## BURDEN OF PROOF

■ The Debtor must establish that the Loan represents an "undue hardship" by the preponderance of the evidence. *Healey v. Massachusetts Higher Educ. (In re Healey),* 161 B.R. 389, 393 (E.D.Mich.1993).

## WHETHER THE LOAN REPRESENTS AN UNDUE HARDSHIP

After weighing the evidence adduced at trial, the Court concludes that the Loan does not "impose an undue hardship on the debtor and the debtor's dependents" within the meaning of 11 U.S.C. § 523(a)(8)(B). Therefore, the Loan should be excepted from discharge.

The Sixth Circuit has applied the three part test articulated in *Brunner v. New York State Higher Educ. Services Corp.* in determining whether a student loan obligation constitutes an "undue hardship". *See Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356, 359–60 (6th Cir.1994) (applying *Brunner* test); *Brunner v. New York State Higher Educ. Services Corp.,* 831 F.2d 395, 396 (2nd Cir.1987) (per curiam) (debtor must prove "(1) that the debtor cannot maintain based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans").

■ The Debtor has failed to show that she is incapable of maintaining a minimal standard of living while repaying the Loan.

The Debtor has maximized her employment opportunities. *See In re Cheesman,* 25 F.3d at 359–60 (finding that debtors had maximized employment opportunities where debtors whose gross incomes aggregated $15,676.00 "chose to work in worthwhile, albeit low-paying, professions"). Nonetheless, in view of the fact that the Debtor has made no effort to sell the House or obtain any rental income from the House, the Court cannot conclude that the Debtor has maximized her economic resources. *C.f. Lynn v. Diversified Collection Service (In re Lynn),* 168 B.R. 693 (Bankr.D.Ariz.1994) (finding that debtor's tithing expense was not appropriate to determination of whether debtor's circumstances constituted an undue hardship). The Debtor has the present ability to liquidate the Loan either by selling her interest in the House or by collecting rent for the House.

Significantly, the Debtor's testimony as to certain of her current expenses has not persuaded the Court that her current circumstances represent an undue hardship.

The Court notes that the Debtor did provide certain expense information in response to pretrial interrogatories submitted by the Lender (the "Interrogatory Answers"). However, the Interrogatory Answers were not offered in evidence by the parties and, therefore, do not constitute part of the record before the Court. *See Ezell v. Mobile Housing Bd.,* 709 F.2d 1376, 1380 n. 7 (11th Cir.1983) (answers to interrogatories which were not admitted into evidence did not constitute part of the record) (citation omitted); *Bracey v. Grenoble,* 494 F.2d 566, 570 n. 7 (3rd Cir.1974) (trial court erred in considering answers to interrogatories which had not been admitted as evidence) (citations omitted); *Heilig v. Studebaker Corp.,* 347 F.2d 686, 689 (10th Cir.1965) ("interrogatories do not become evidence in the case, unless voluntarily introduced by the interrogator as admissions against interest on the part of the party interrogated") (footnote with citations omitted); *Lease–A–Fleet, Inc. v. Wolk (In re Lease–A–Fleet, Inc.),* 151 B.R. 341, 347 (Bankr.E.D.Pa.1993) (refusing to consider answers to interrogatories which had not been made part of the record) (citations omitted). Further, even if the Interrogatory Answers could be considered as substantive evi-

dence, the Debtor's testimony at trial compels the conclusion that the information which she provided in the Interrogatory Answers does not accurately reflect her current expenses.

Moreover, the evidence before the Court does not support a finding that the Debtor will be unable to maintain a minimal standard of living for a substantial portion of the Loan's repayment period if she is required to repay the Loan. *See In re Roberson,* 999 F.2d 1132, 1137 (7th Cir.1993) (loan excepted from discharge notwithstanding the fact that debtor had no income and $680.00 per month in expenses where evidence indicated that "the debtor's dire straits [were] only temporary"); *see also Brunner* 831 F.2d at 396 (finding student loan nondischargeable where "[t]he record demonstrat[ed] no 'additional circumstances' indicating a likelihood that [the debtor's] [ ] inability to find any work [would] extend for a significant portion of the loan repayment period" in a case where debtor had no dependents and was not disabled or elderly).

Furthermore, the Debtor's vague testimony as to her efforts to repay the Loan has not satisfied her burden of demonstrating that she has proceeded in good faith. *See In re Healey,* 161 B.R. at 397 (finding that debtor's attempt to discharge debt without first seeking to negotiate a payment arrangement with lender evinced bad faith).

Although repayment of the Loan will undoubtedly limit the Debtor's discretionary spending in the future, the Debtor has not demonstrated that the hardship attendant to repayment of the Loan will be "undue". Therefore, Lender is entitled to judgment on the Loan.

■ Lender is also entitled to interest on the Loan at the contract rate. *See American General Finance, Inc. v. Steinbrunner (In re Steinbrunner),* 149 B.R. 484, 489 (Bankr. N.D. Ohio 1992) (debtor liable for interest on nondischargeable debt at contract rate).

■ Lastly, the Court finds that Lender is not entitled to attorneys' fees. "[C]reditors are entitled to recover attorney's fees in bankruptcy [ ] if they have a contractual right to [such fees] valid under state law".

*Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1168 (6th Cir.1985). However, "[i]n Ohio, stipulations in promissory notes providing for payment of attorneys' fees, arising in connection with the failure to pay the principal and interest balance at maturity, are contrary to public policy and are void." *Simons v. Higher Educ. Assistance Foundation (In re Simons),* 119 B.R. 589, 593–94 (Bankr.S.D. Ohio 1990) (citations omitted); *see Foreman v. Higher Educ. Assistance Foundation (In re Foreman),* 119 B.R. 584, 588 (Bankr.S.D. Ohio 1990) (contractual provision for creditor's attorney fees void under Ohio law on public policy grounds). Moreover, even if such an award were permissible, Lender has failed to adduce sufficient evidence to support such an award.

In light of the foregoing, it is therefore

ORDERED that the debt owed by the Debtor to Lender be, and it hereby is, excepted from discharge. It is further

ORDERED that Lender be, and it hereby is, granted judgment on its counterclaim against the Debtor on the Loan plus interest at the contract rate.