In re Katy J. McLEOD, Debtor.

Katy J. McLEOD, Plaintiff,

v.

AFSA DATA CORPORATION, Defendant.

Bankruptcy No. 94–30010.
Adv. No. 94–3068.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

March 25, 1996.

---

Ellen Kornblum, Beverly Hills, California, Samuel Osnowitz, Toledo, Ohio, for Defendant.

## OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE AND DISMISSING COMPLAINT

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on Debtor/plaintiff Katy J. McLeod's (the "Debtor") complaint which seeks to discharge promissory notes in the amount of $9,056.41 (the "Notes") held by AFSA Data Corp. ("AFSA") pursuant to 11 U.S.C. § 523(a)(8). Based on the Court's consideration of the evidence adduced at the hearing on this matter and the deposition of Dr. Bonnie McNamara, the Court finds that the Debtor's complaint is not well taken and should be dismissed. The Court further finds that the Notes held by AFSA should be excepted from discharge.

### FACTS

The Debtor filed a petition under chapter 7 of title 11 in 1994.

The Debtor, who is presently 52 years old, incurred her student loan debt while completing her final year of law school at Ohio Northern University. She seeks to discharge the Notes because they allegedly impose an "undue hardship" upon the Debtor and her 16 year-old son Thor.

### The Debtor's Income

The Debtor has served full-time as a compliance officer with the Allen Metropolitan Housing Authority ("AMHA") since March, 1990, earning a gross income of $29,094.52 in 1995. The Debtor also reported taxable income of $684.00 in 1995 which represents the value of the use of a vehicle supplied by AMHA.

The Debtor testified that she receives net pay of $835.11 every two weeks. Thus, by the Court's calculation, the Debtor nets $1,809.40 per month.

The Debtor testified that she does not expect further pay raises or cost of living increases in her employment at AMHA. The Debtor further testified that she expects a 5% reduction in her income in the forseeable future because of recent cutbacks in the Department of Housing and Urban Development which funds AMHA.

Although the Debtor testified that she actively sought employment as an attorney prior to accepting a position with AMHA, her efforts were unavailing.

### The Debtor's Assets

The Debtor owned a one-half interest in a residence located in Lima, Ohio on the Petition Date. However, the Debtor testified that she sold this residence in order to pay for certain necessities incurred subsequent to the Petition Date including moving expenses, medical bills, income taxes and attorney fees.

### The Income and Assets of the Debtor's Son

In view of the Debtor's argument that payment of the Notes would impose an undue hardship on her son Thor, the Court also heard evidence as to the income and assets available for Thor's support.

Thor receives $579.00 per month in survivor's benefits from the Social Security Administration.

In addition, Thor is the beneficiary of a guardianship estate which was established subsequent to his father's death in 1982 (the "Guardianship"). The Guardianship had an approximate value of $14,930.93 on May 24, 1994. Although the Debtor could not testify as to the exact balance of the Guardianship, her testimony indicated that the Guardianship likely has a present value in excess of $10,000.00.

The Debtor testified that Thor may obtain funds from the Guardianship in the Allen County Probate Court on a showing of "good cause". The Debtor testified that she has not attempted to obtain funds from the Guardianship in order to pay for Thor's daily

necessities. Nevertheless, the Debtor testified that her son received funds from the Guardianship for a recent birthday in the amount of $200.00 and for the purchase of a truck in the amount of $2,000.00.

## The Expenses of the Debtor and Her Son

The Debtor also testified as to her monthly expenditures for January, 1996. She acknowledged, however, that a number of these amounts did not represent recurring monthly expenses. First, the Debtor testified that her payment for the January telephone bill encompassed two months of telephone service. Second, the Debtor acknowledged that her payments for propane gas did not bear any relationship to her monthly propane gas usage throughout the year. Third, the Debtor acknowledged that her scheduled monthly expenditure for prescription drugs does not account for the fact that her medical insurance pays 80% of this expense after she meets a $200.00 yearly deductible. Fourth, the Debtor testified that her monthly expenditure for food includes a number of sundry items. This expense apparently includes a $60.00 monthly expense for cigarettes. *See* Plaintiff's Answers to Defendant's First Set of Interrogatories and Request for Admissions, at p. 4, para. 17.

Additionally, this Court has previously held that the Debtor's student loan debt to Nebraska Student Loan Program, Inc. ("NSLP") is nondischargeable, which matter is presently pending in the Sixth Circuit Court of Appeals. *McLeod v. Diversified Collection Services (In re McLeod)* (hereinafter *"McLeod I"*), 176 B.R. 455 (Bankr. N.D.Ohio 1994), *appeal dismissed,* Case No. 94–CV–7709 (N.D.Ohio July 6, 1995). Despite the Debtor's failure to provide any testimony as to the amount of this monthly payment, the Court notes that such payment apparently approximates $68.68 per month. *McLeod I,* 176 B.R. at 456.

The Court has attempted to quantify the Debtor's monthly expenditures as more fully set forth below.

|  | Amount per Debtor | Adjusted Amount |
|---|---|---|
| Rent | $600.00 | $600.00 |
| Electricity | $199.00 | $199.00 |
| Propane ordered by landlord | $104.83 | $104.83 |
| Propane ordered by Debtor | $190.59 |  |
| Telephone | $102.88 | $51.44 |
| Cable television | $22.52 | $22.52 |
| Life insurance | $43.03 | $43.03 |
| Car insurance | $41.00 | $41.00 |
| Prescription drugs | $68.00 | $31.00 |
| Gasoline | $80.00 | $80.00 |
| Cloths for son | $40.00 | $40.00 |
| School lunch for son | $40.00 | $40.00 |
| Allowance for son | $30.00 | $30.00 |
| Magazines for son | $20.00 | $20.00 |
| Entertainment | $20.00 | $20.00 |
| Student Loan Debt to NSLP |  | $68.68 |
| Student Loan Debt to AFSA |  | $176.52 |
| Food | $500.00 | $500.00 |
| **Total** | **$2,108.85** | **$2,068.02** |

Significantly, the Debtor's monthly expenditures for her son will only represent necessities until Thor graduates from high school in 1999. These expenditures include a portion of the Debtor's food bill as well as expenditures for Thor's clothes, school lunches, allowances and magazines. In three years, the Debtor's scheduled monthly expenditure of $43.01 for life insurance can also be eliminated without depriving her son of the necessities of life.

The Debtor further testified as to a number of debts which she has incurred postpetition. However, the Debtor has not convinced the Court that these represent recurring expenses.

## The Debtor's Physical and Psychological Health

The Debtor further argued that her health problems warrant a finding of undue hardship. First, the Debtor testified that she has high blood pressure. She currently controls this condition with medication. Second, the Debtor testified that she has degenerative arthritis. The Debtor testified that she does not take any medication for this condition. Third, the Debtor testified that she has suffered from periodic episodes of depression since July, 1992. Fourth, the Debtor testified that, as a result of intestinal bypass surgery in 1975, she suffers from chronic diarrhea. The Debtor testified that these health problems are not disabling. Further, the Debtor testified that these health problems have not prevented her from working full-time at the AMHA since March, 1990.

**The Debtor's Student Loans**

The Debtor testified that the original principal balance on the Notes approximated $10,000.00.

According to the Debtor's testimony, her scheduled monthly payment to AFSA approximates $176.52. The Debtor further testified that her total payments on the Notes from 1984 through 1992 approximated $5,300.00.

The Debtor obtained a deferment of her obligation from 1988 through April of 1990 during a period when she was unemployed.

The Debtor defaulted on the Notes in 1992. The Debtor owed a balance of $9,056.41 on the Notes on May 12, 1994.

The Debtor testified that her bankruptcy filing was not motivated by a desire to discharge her student loans. Rather, the Debtor testified that she filed bankruptcy because J.C. Penney and CitiBank South Dakota filed collection actions against her prior to the Petition Date.

**The Period of Time That the Notes Had Been Outstanding on the Petition Date**

The parties agree that the Notes had been outstanding for less than 7 years on the Petition Date, excluding the time when AFSA granted the Debtor an unemployment deferment. *See* Debtor/Plaintiff's Pre–Trial Brief, at p. 5, para. 3; Defendant's Trial Brief, at p. 2, para. 1.

*DISCUSSION*

**APPLICABLE STATUTE**

Section 523(a)(8) provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from a debt for:

an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

...(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

11 U.S.C. § 523(a)(8).

**BURDEN OF PROOF**

The Debtor bears the burden of proof on the issue of "undue hardship" by the preponderance of the evidence. *Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 393 (E.D.Mich.1993). AFSA bears the burden of proof on all other issues. *In re Healey*, 161 B.R. at 393–94.

**WHETHER THE DEBTOR'S LOANS REPRESENT EDUCATIONAL LOANS MADE UNDER A PROGRAM FUNDED IN WHOLE OR IN PART BY A GOVERNMENTAL UNIT**

The Notes are educational loans made under a program funded by a governmental unit. The Debtor concedes that the Notes represented educational loans. Further, the Notes were made under the Robert T. Stafford Loan Program which is funded by the United States government, a "governmental unit" within the meaning of 11 U.S.C. § 101(27).

**WHETHER REPAYMENT OF THE NOTES IMPOSES AN "UNDUE HARDSHIP" ON THE DEBTOR OR HER SON**

The Court cannot conclude that the Debtor's obligation to AFSA has imposed an "undue hardship" on the Debtor or her son.

Although the determination of whether a student loan represents an "undue hardship" cannot be equated with "the application of [an] algebraic equation[ ]", *Moorman v. Commonwealth of Kentucky, Higher Education Assistance Authority (In re Moorman)*, 44 B.R. 135, 137 (Bankr.W.D.Ky.1984), this Court shall apply the test articulated in *Brunner v. New York State Higher Educ. Services Corp.* to guide its discretion. *See Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987) (per curiam) (requiring debtor to prove "(1) that the debtor cannot maintain based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of

the student loans; and (3) that the debtor has made good faith efforts to repay the loans"); *see also Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 302—305 (3rd Cir.1995), (adopting *Brunner* test); *In re Roberson,* 999 F.2d 1132, 1135—37 (7th Cir.1993) (adopting *Brunner* test). While the Sixth Circuit has not expressly adopted a test for determining whether a debtor's student loans impose an "undue hardship", the Sixth Circuit has applied the *Brunner* test. *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356, 359–60 (6th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995).

"If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." *Faish,* 72 F.3d at 306 (citing *Roberson,* 999 F.2d at 1135); *cf. United States v. Rice,* 182 B.R. 759, 762 (N.D.Ohio 1994) (holding that bankruptcy court could not utilize its equitable powers to reduce debtor's obligation on student loan which bankruptcy court had previously found to be nondischargeable under 42 U.S.C. § 292f(g)).

Initially, the Court finds that the Debtor has made a good faith effort to repay the Notes. *Cheesman,* 25 F.3d at 360.

Nonetheless, here, as in *Faish,* the Debtor has failed to demonstrate that she will be unable to maintain a minimal standard of living if she is required to repay the Notes. *Faish,* 72 F.3d at 306–07 (finding that, although $300.00 student loan payment would significantly impact the disposable income of debtor who earned a yearly salary of $27,-000.00, repayment of student loan would not impose an undue hardship on the Debtor and her son). "The first prong of the *Brunner* analysis requires more than a showing of tight finances." *Faish,* 72 F.3d at 306.

Notwithstanding the Debtor's testimony that she expects a 5% pay reduction, the fact remains that she presently earns $29,094.52 per year and has been employed with AMHA since March, 1990. Further, she will likely be retained in this position for the forseeable future. *Cf. Courtney v. Gainer Bank (In re Courtney),* 79 B.R. 1004, 1015–16 (Bankr. N.D.Ind.1987) (discounting debtor's claim that future employment was uncertain where he had reasonable prospects of retaining job).

Although the Court is sympathetic to the Debtor's physical and mental health problems, courts have generally held that non-debilitating physical or psychological conditions such as those experienced by the Debtor do not impose an "undue hardship" where such conditions do not interfere with a debtor's ability to perform her job duties or present serious potential for a continued future drain on the debtor's financial resources. *See Faish,* 72 F.3d at 300 (finding that debtor failed to demonstrate undue hardship despite " 'significant' " health problems arising from affliction with Crohn's disease where such condition did not interfere with her ability to perform her job); *Daugherty v. First Tennessee Bank (In re Daugherty),* 175 B.R. 953, 959 (Bankr.E.D.Tenn. 1994) (finding absence of undue hardship where debtor's medical condition did not prevent her from performing job duties); *Sands v. United Student Aid Funds, Inc. (In re Sands),* 166 B.R. 299, 310–11 (Bankr. W.D.Mich.1994) (finding that debtor failed to establish undue hardship despite testimony as to debtor's loss of vision in one eye and ulcers on his feet); *Gammoh v. Ohio Student Loan Comm'n (In re Gammoh),* 174 B.R. 707, 710 (Bankr.N.D.Ohio 1994) (finding that debtor/wife's arthritic hand did not impose an undue hardship where such condition was not a barrier to future employment); *Ford v. Tennessee Student Assistance Corp. (In re Ford),* 151 B.R. 135, 138–39 (Bankr.M.D.Tenn.1993) (finding that debtor, who was 50% disabled because of back problems, failed to demonstrate undue hardship); *Coleman v. Higher Education Assistance Foundation (In re Coleman),* 98 B.R. 443, 453 (Bankr.S.D.Ind.1989) (finding that debtor's non-debilitating high blood pressure did not impose an undue hardship); *Moorman,* 44 B.R. at 136–37 (finding that debtor's "stress condition" and heart condition which did not require medication or prevent her from working did not impose an undue hardship); *Fischer v. State University of New York (In re Fischer),* 23 B.R. 432, 433–34 (Bankr.W.D.Ky.1982) (finding that

debtor's psychiatric disorder which he treated by making phone calls to psychiatrist in New York did not warrant finding of undue hardship).

Moreover, the Debtor's obligation to repay the Notes does not impose an undue hardship on her son. Here, as in *Simons v. Higher Education Assistance Foundation (In re Simons)*, although the Debtor is required to provide for a dependent relative, that dependent relative has monthly income which contributes to the Debtor's household. *Simons v. Higher Education Assistance Foundation (In re Simons)*, 119 B.R. 589, 593 (Bankr.S.D.Ohio 1990). In addition, Thor has at least limited access to the funds from the Guardianship to pay for necessities.

Indeed, the Debtor's financial circumstances may improve in the forseeable future in light of the fact that Thor will be graduating from high school in 1999. *See Simons*, 119 B.R. at 593 (concluding that debtors' financial circumstances were likely to improve in the forseeable future as debtors' 16 year-old son was close to the age of majority); *Lohman v. Connecticut Student Loan Foundation (In re Lohman)*, 79 B.R. 576, 584 (Bankr.D.Vt.1987) (concluding that debtor's obligation to support 18 year-old child did not warrant finding of undue hardship where debtor did not present evidence that such obligation would continue beyond child's high school graduation); *cf.* O.R.C. § 3103.03(B) (stating that parental duty of support continues until high school graduation). The Debtor's scheduled monthly expenditures for Thor's benefit will cease to be necessities in the forseeable future.

Therefore, the principal balance and the interest on the Debtor's student loans is nondischargeable. *See McLeod I*, 176 B.R. at 458; *cf. Leeper v. Pennsylvania Higher Education Assistance Agency*, 49 F.3d 98, 100–05 (3rd Cir.1995) (finding that student loan lender could accrue postpetition interest on nondischargeable debt).

In light of the foregoing, it is therefore

ORDERED that the Debtor's complaint be, and it hereby is, dismissed with prejudice. It is further

ORDERED that the Debtor's debt to AFSA be, and it hereby is, excepted from discharge.