**In re Cathy Lynn WINDLAND, Debtor.**

**Cathy Lynn WINDLAND, Plaintiff,**

v.

**U.S. DEPARTMENT OF EDUCATION, et al., Defendants.**

**Bankruptcy No. 95–52342.
Adversary No. 96–5031.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Sept. 27, 1996.

Robert M. Whittington, Elk, Elk & Whittington, Akron, OH, for Plaintiff.

James L. Bickett, Assistant U.S. Attorney, Akron, OH, for Defendants.

## ORDER GRANTING DEBTOR'S MOTION TO DISCHARGE DEBT

MARILYN SHEA–STONUM, Bankruptcy Judge.

This adversary proceeding was commenced upon the Plaintiff–Debtor's filing of a Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(8)(B). At issue are student loans that were federally guaranteed and came due less than seven years before the date of the filing of the Plaintiff's bankruptcy petition. Thus, the only basis for permitting their discharge would be the Debtor's establishing that requiring their repayment would impose an "undue hardship" on the Debtor and her dependents. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), referred to this Court by a General Order entered in this District on July 16, 1984, and properly before this Court for final determination.

## I. FACTUAL BACKGROUND

Debtor filed her chapter 7 petition on December 26, 1995. On February 20, 1996, she filed an adversary proceeding in which she sought a determination of the dischargeability of student loans incurred by Debtor while attending Mansfield Business College. The total amount of the loans equals $3,314.70.[1] The U.S. Department of Education responded, claiming that the Debtor could maintain a minimal standard of living while still repaying the loans, that there was a likelihood of improvement in Debtor's financial situation in the future, and that Debtor did not engage in a good faith effort to repay the loans.

At the trial on July 23, 1996, the Debtor's testimony as to the following was undisputed, and the Court makes the following findings of fact.

Debtor is a 36 year old single woman. She has two daughters, ages 14 and 9. They are the center of the Debtor's existence, and she is determined to provide as stable an environment for them as she possibly can, emphasizing not luxury, but the value of education and hard work. Debtor receives child support for her eldest daughter in the amount of $84.16 per week; however, she receives only sporadic child support payments for her youngest daughter.[2]

Debtor herself has suffered a traumatic life. She was abandoned by her mother when she was a young child, and thereafter was raised in a children's home in Summit County and in a series of foster homes. She was abused by one of her foster mothers. When Debtor was 14, she found her natural mother who reiterated her disinterest in the Debtor, and thus the Debtor has no relationship with her. She has one sister from whom she receives no emotional or financial support. In short, the Debtor is the sole source of emotional support and the primary source of financial support for her dependent daughters.[3] Were she to encounter any un-

1. Debtor claims that the amount owed on the student loans is $2,162.47, while the U.S. Department of Education claims that the amount owed is $3,314.70. However, the dispute over the amount does not affect the outcome of this case, and the parties stipulated that for the purposes of the hardship analysis, the Court should treat the higher figure as controlling.

2. Debtor testified that Janett's father is under a court order to pay $89.00 per week, but she cannot rely on timely and consistent payments. She also testified that she is owed over $13,000.00 in back support from Janett's father. Unfortunately, Janett's father apparently moves around from job to job to avoid his support obligation.

3. Debtor testified that Janett's father occasionally visits his daughter, but with no regularity.

expected financial reverses, there is no one to whom she or her daughters could turn to for financial assistance. Debtor dropped out of high school in the tenth grade; she did earn her GED in 1978. In 1982, she took out a student loan to attend Hammel College.[4] The proceeds of the loan were stolen from her house before she could pay the tuition. She had no other funds with which to pay tuition; thus, she was forced to abandon her plans to attend college at that time.

Debtor testified that she suffered from post-traumatic stress syndrome after the birth of her first child because of an accumulation of factors including the abuse she suffered as a child and the circumstances surrounding her first child's birth. Debtor testified that she had dated the child's father for five years, but learned only one week before her daughter's birth that he was married. She sought treatment and was hospitalized at Akron General Medical Center and Akron City Hospital. While debtor is no longer being treated for post-traumatic stress syndrome, she does suffer from high blood pressure and was at one time under doctor's orders to stay home from work to get her blood pressure under control.[5]

In 1988, debtor enrolled in Mansfield Business College with the hope of liberating herself from welfare and providing a better life for her children. In order to finance her education, debtor executed two promissory notes guaranteed by the U.S. Department of Education. She completed the course work in medical assistance in 1989 and secured a job with a doctor's office. However, she was required to work 50 hours a week in return for a minimum wage payable for 40 hours. After the office began sending work home with her as well, Debtor quit her job to find a new position. The first job she could secure

was at a factory working for a wage of $5.90 an hour.

Debtor was subsequently laid off and once again was dependent on welfare. In 1991, the Debtor received unemployment benefits and food stamps. In 1992, her unemployment benefits were discontinued and her only source of income was ADC. In 1993 and 1994, her tax refunds were intercepted by the IRS for application to her loans. At various times, the Debtor's only source of income was child support as she had not continued to qualify for public assistance. In June of 1994, Debtor secured a job at Valley View Nursing and Rehabilitation Center ("Valley View") for $6.25 per hour and continues to hold this position. In late 1994, she worked a second job at Revco for two months at minimum wage in order to provide her daughters with Christmas gifts.

While at her factory job, debtor made $50.00 payments on her loans when they first became due in 1990. After being laid off, she talked to the loan agency and made arrangements to pay what she could afford. However, she stopped making payments as she only had enough income to pay rent and food expenses.

Currently, debtor receives a net pay of $961.61 per month. Overtime is discouraged and rarely offered by her employer. Debtor did receive a raise recently bringing her hourly wage to $7.00. There is a very strict limit on the paid sick leave. Debtor also receives $357.00 in child support for her oldest daughter. She should also receive $381.00 in support payments from the father of her youngest daughter, but payment is sporadic and undependable. Thus, Debtor's dependable monthly net income totals $1,318.61.[6] Debtor reported living expenses on her bankruptcy schedules of $1,339.50 per month, although she stated that these figures

---

4. This loan is not the subject of this adversary proceeding as it was clearly dischargeable becoming due more than seven years prior to the filing of the Debtor's Chapter 7 case.

5. On cross-examination, the attorney for the U.S. Department of Education questioned debtor's failure to disclose this syndrome in response to interrogatories on medical disabilities. Debtor stated that, while she does suffer from post trau-

matic stress syndrome, she does not regard it as a "disability" and thus did not disclose it.

6. The United States argues that $229.50 annually, or approximately $19.00 monthly, should be added to the income calculation. This amount represents what Debtor has taken out of her paycheck and put into a Christmas fund in order to be able to purchase presents for her children.

are low estimates.[7] Debtor testified that she simply cannot afford to go to the dentist, and she cannot afford to obtain car insurance. Debtor and her dependents cannot afford any entertainment. Time of the Debtor not spent at work is spent at home. Moreover, she has no cash reserve in case of an emergency.

## II. LAW

■ This Court must now determine whether Debtor is entitled to a hardship discharge under 11 U.S.C. § 523(a)(8)(B). That section provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—
>>> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(B). This section embodies a policy decision that the repayment of federally insured educational loans generally trumps providing a fresh start to debtors. *Andrews University v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir.1992). However, this policy choice is tempered by the "undue hardship" exception. *Elebrashy v. Student Loan Corp. (In re Elebrashy)*, 189 B.R. 922, 925 (Bkrtcy.N.D.Ohio 1995).

Neither the Bankruptcy Code nor the legislative history of § 523(a)(8)(B) define "undue hardship." Generally, courts have determined that undue hardship is more than mere unpleasantness or "garden-variety" difficulty. *Gammoh v. Ohio Student Loan Comm'n (In re Gammoh)*, 174 B.R. 707, 709 (Bkrtcy.N.D.Ohio 1994) (stating that undue hardship usually requires some extraordinary circumstances). In their struggle to define "undue hardship," courts have developed a tripartite test widely followed in this Circuit. *See Silliman v. Nebraska Higher Educ. Loan Program (In re Silliman)*, 144 B.R. 748 (Bkrtcy.N.D.Ohio 1992); *Foreman v. Higher Educ. Assist. Foundation (In re Foreman)*, 119 B.R. 584 (Bkrtcy.S.D.Ohio 1990) (discussing the mechanical, good faith and policy tests). The Sixth Circuit, while not adopting a test *per se*, applied the factors for determining when undue hardship exists set forth in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987) (which in large part incorporates the mechanical, good faith and policy tests). *See Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995) (citing *Brunner v. New York State Higher Educ. Serv. Corp., id.* The *Brunner* test has since been widely followed by the courts in this circuit. *See Cobb v. Univ. Of Toledo (In re Cobb)*, 188 B.R. 22 (Bkrtcy.N.D.Ohio 1995); *In re Elebrashy*, 189 B.R. 922; *McLeod v. Diversified Collection Services (In re McLeod)*, 176 B.R. 455 (Bkrtcy.N.D.Ohio 1994).

■ Under the *Brunner* test, this Court must determine:

> "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

---

**7.** Debtor's schedule listed the following expenses.

| | |
|---|---|
| Rent | $460.00 |
| Electric and Gas | $150.00 |
| Water and Sewage | $ 25.00 |
| Telephone | $ 35.00 |
| Food | $320.00 |
| Clothing | $ 50.00 |
| Laundry and Dry Cleaning | $ 20.00 |
| Medical and Dental Co-pay | $ 32.00 |
| Transportation | $ 50.00 |
| Entertainment | $  5.00 |
| Health Insurance | $ 50.00 |
| Installment Payments | $ 62.50 |
| Babysitting | $ 80.00 |

Debtor testified that the figures represent low estimates. For instance, she testified that her oldest daughter is a severe asthmatic, requiring six medications a day. These medications cost the Debtor a minimum of $60.00 every month over and above health insurance coverage.

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period . . . ; and

(3) that the debtor has made good faith efforts to repay the loans."

*Brunner*, 831 F.2d at 396. The debtor must establish the existence of an "undue hardship" by the preponderance of the evidence. *Cobb v. Univ. Of Toledo (In re Cobb)*, 188 B.R. 22, 23 (Bkrtcy.N.D.Ohio 1995); *Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 393 (E.D.Mich.1993).

## III. DISCUSSION

■ In the instant case, the Debtor must establish that she cannot maintain a minimal standard of living, that her current circumstances will persist well into the foreseeable future, and that she made a good faith effort to repay her educational obligation.

### A. Standard of Living

Under the first prong of the *Brunner* test, the Debtor must show that she cannot maintain a minimal standard of living for herself and her dependents while repaying her educational loans. When assessing this prong, the courts look to factors such as current income and expenses and whether the Debtor is maximizing employment opportunity and resources, while minimizing expenses. *In re McLeod*, 176 B.R. at 457.

The Debtor's net monthly income based on wages and the regular child support for her oldest daughter is $1,318.61.[8] This amount is below her listed expenses of $1,339.50. If the Court adds into Debtor's income, as the United States argues, the money set aside in a Christmas fund for her daughters and a 1995 tax refund amount, the Debtor's monthly income would be $1,548.50.[9] If that were the case, then the Debtor would exceed the expenses that she detailed at the time of her bankruptcy filing by $209.00. (This is a monthly amount as the United States takes

into account the tax refund of $2,494.13 that the Debtor received in 1995). However, the scheduled expenses do not take into account an increase in food expenses during the summer when her children are out of school, amounts spent on medications for her asthmatic daughter, or a loss of income if the Debtor is required to miss work to care for either child in the event of significant sickness. The monthly amount spent on asthma medication alone equals $60.00 of unbudgeted expense not set forth in the Debtor's scheduled expenses. The Debtor testified that she lives paycheck to paycheck. She does not allocate any money towards home or auto insurance as she cannot afford it, and has budgeted a mere $5.00 a month for the entertainment of herself and her children. There is also no amount budgeted for car repairs should such contingency arise. Furthermore, this Court is not willing to conclude that depriving the Debtor of the ability to present each of her daughters with a few Christmas presents each year would not be particularly cruel, since there is no other apparent source for such largesse in these children's lives. It is readily apparent to this Court that the Debtor lives a very frugal lifestyle and has done her best to maximize her resources, while minimizing her expenses.

■ When a statute is applicable, the Court must look to the language used. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). Moreover, the Court should give effect to each word in the statute. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979); *Barker v. Chesapeake & Ohio R.R.*, 959 F.2d 1361, 1367 (6th Cir.1992), *cert. denied*, 506 U.S. 1000, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992). The pertinent language in § 523(a)(8)(B) states that a discharge

8. This Court firmly believes that the child support the Debtor receives for her daughters should be allocated towards the needs of those children. It should not be used to repay loans that were not used to finance the children's education.

9. Debtor has $10.00 per month withheld from her paycheck and put into a Christmas fund in which she hopes to buy Christmas gifts for her children. The remaining amount that the U.S. would like to have added into Debtor's income is a 1995 tax refund amount of $2494.13.

should be allowed when repayment would "impose an undue hardship on the debtor *and the debtor's dependents.*" 11 U.S.C. § 523(a)(8)(B) (emphasis added). One of the key deciding factors for this Court is the impact that requiring the repayment of the loans would have on the Debtor's daughters. The Debtor is a parent who is working very hard to provide for the physical and emotional needs of her children. In return, her daughters are responding positively by working hard in school and bringing home good grades. The Debtor and her dependents live a spartan life. This Court is particularly cognizant that requiring repayment of the Debtor's student loans and thus imposing several years of living at a even more minimal standard will result in her daughters' childhood years being barren of the most minimal experiences that are not provided through their respective schools. Moreover, her dependents will suffer if the Debtor is unable to begin to plan to contribute funds toward their higher education.

### B. Additional Circumstances

■ The second prong of the *Brunner* test requires that a debtor show circumstances which preclude payment on the student loans are likely to persist for a significant portion of the repayment term. *In re Cheesman*, 25 F.3d at 359. If the debtor's situation is likely to improve, then requiring the debtor to pay on the loan would not impose an undue hardship. However, if the inability to repay will extend well into the future, then it is likely that requiring payment would be an undue hardship. *See In re Elebrashy*, 189 B.R. at 927–28.

In this case, the Debtor has demonstrated that her difficult circumstances are more likely than not to persist well into the future. It is obvious that the debtor has put forth a great deal of effort in trying to improve her financial and life circumstances. She completed only the ninth grade in high school, later securing her GED. She later attended Mansfield Business College and testified that she felt "conned" by the program.[10] Debtor

has now secured a job making a wage of $7.00 per hour. Based on her skills, it is likely that this is the best job she will obtain. The Court observed the Debtor at trial and perceived an individual who is determined to provide for her daughters and thus to meet her employer's expectations. The Debtor evinced significant intelligence, but also an edge in her personality thus making the prospect of her advancement to any supervisory position unlikely. It is her limited "people" skills causes this Court to conclude that she is very unlikely to climb the career ladder from her current position to an improved one. In short, the Debtor's prospect for advancement is unlikely, and it is commendable that she has overcome past adversity to acquire and retain her current position. Unfortunately, in that position, there is little opportunity for overtime, and in fact, it is discouraged by debtor's employer. *See In re Elebrashy*, 189 B.R. at 927–28.

Debtor battles significant stress, caused by a combination of factors including the abuse she received as a child, abandonment by her mother, and the circumstances surrounding the birth of her first daughter, but is determined not to view herself as an on-going victim. Although, her high blood pressure appears to be under control, Debtor has a history of high blood pressure and has been required to take time off work for this condition. Not only does the Debtor suffer some mental and physical ailments, but her daughter is a severe asthmatic, a condition that sometimes requires the Debtor to miss work and the corresponding income. It is apparent that Debtor's hardship is not a temporary condition, but rather a long-term situation that she has been dealing with and will continue to deal with in the foreseeable future. *See In re Cobb*, 188 B.R. 22.

### C. Good Faith Effort

■ The final prong of the *Brunner* test requires a debtor to have made a good faith effort to repay the loan, and that repayment is prevented by forces beyond the debtor's control. *In re Cobb*, 188 B.R. at 24. Factors

---

10. A number of her classmates filed and won a suit against Mansfield Business College for being

misled. The Debtor did not join in the suit.

to be considered include the number of payments Debtor made, attempt to negotiate with the lender, proportion of loans to total debt, and possible abuse of the bankruptcy process. *See In re Cobb*, 188 B.R. 22; *In re Healey*, 161 B.R. 389; *In re McLeod*, 176 B.R. at 457; *In re Cheesman*, 25 F.3d 356.

In this case, the Debtor testified that she actually made payments to the lending institution when she began working. After being laid off, debtor spoke with the lender in an effort to make arrangements to make affordable payments. Subsequently, payments ceased in order to cover rent and food expenses. Debtor has incurred various debts with a number of other creditors, and that her petition was filed in good faith. Moreover, it is clear to this Court that the Debtor is not trying to escape her repayment obligation, only to promptly secure a better paying job. The loans in question came due less than seven years ago. Debtor has secured the best job she is likely to have, and there is no indication that she is abusing the bankruptcy process.

## IV. CONCLUSION

It is obvious that the Debtor has overcome great adversity in her life in order become independent of public assistance and to provide for her children. If she were required to repay her educational loan, the Debtor and her dependents could easily fall below the minimal standard of living that they are now just barely achieving. Furthermore, the Debtor's circumstances are likely to persist well into the foreseeable future. Therefore, this Court finds that a hardship discharge pursuant to 11 U.S.C. § 523(a)(8)(B) is warranted.

**IT IS SO ORDERED.**

### JUDGMENT ENTRY

In accordance with this Court's decision and pursuant to Bankruptcy Rule 7054, judgment is hereby entered for the Plaintiff.

**IT IS SO ORDERED.**