**In re Terrie Jo MARKLEY, Debtor.**

**Terrie Jo Markley, Plaintiff,**

v.

**Educational Credit Management Corp., Defendant.**

Bankruptcy No. 98–53446.
Adversary No. 98–5165.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 28, 1999.

Carl G. Hiteman, Medina, OH, for Terrie Jo Markley.

Matthew J. Thompson, Weltman, Weinberg & Reis Co., L.P.A., Columbus, OH, for Educational Credit Management Corp.

## ORDER REGARDING DISCHARGE-ABILITY OF STUDENT LOANS

MARILYN SHEA-STONUM, Bankruptcy Judge.

This matter came before the Court on the Amended Complaint to Determine Dischargeability filed by Terrie Jo Markley ("Debtor") and the Answer of Educational Credit Management Corporation ("EMC") thereto.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (O). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a) and (b)(1) and by the Standing Order of Reference entered in this District on July 16, 1984.

## I. FINDINGS OF FACT

Debtor filed her chapter 7 petition on October 30, 1998. On November 3, 1998, Debtor filed an adversary proceeding in which she sought a determination of the dischargeability of a consolidation loan (the "Loan"). The Loan paid student loans which Debtor incurred to attend Wayne County Community College. EMC responded, claiming that excepting the Loan from discharge would not constitute an undue hardship on Debtor and her dependents.

At trial, the parties stipulated that the Loan was taken out in 1991, that the principal amount of $15,712.11 was disbursed on July 5, 1991, and that the Loan provides for interest in the amount of 9% per annum, or $6.61 per diem. As of February 8, 1999, the outstanding amount of the Loan equaled $31,699.68.

Unless otherwise noted, the following facts are set forth in a Joint Stipulation of Facts submitted by the parties or constitute Debtor's undisputed testimony at the May 4, 1999 trial.

Debtor is a 36 year old single woman. She has two dependents, a daughter age 8 and a son age 7. Debtor testified at trial that she has another son, age 20. Her elder son does not live with her, and she has not spoken with him for two years.

Debtor dropped out of high school in tenth grade. She subsequently had her first son and was married for two years to the father of that son. For approximately two years, from 1987 to 1989, Debtor attended Wayne County Community College, majoring initially in social work and then in elementary education. Debtor did not receive a degree from Wayne County Community College. While enrolled there, Debtor, who had remarried, became pregnant; Debtor could not finish college as a result of her pregnancy being "high risk". The course work which Debtor did complete was insufficient to qualify Debtor for a position in elementary education.

Debtor is divorced from the father of Debtor's younger son and daughter. Debtor receives approximately $300 per month in Social Security disability for her children because their father, who lives in Florida, is mentally ill. Debtor's younger son, Leonard, is hyperactive. Because of his behavioral problems, Debtor's relatives will not watch her son, but Debtor has located one babysitter who is willing to do so. Debtor's son sees a school counselor once a week. She and her son also go to family counseling, a portion of which is covered by insurance.

For seven years, Debtor has worked at 3 Rivers Transportation, Inc. Debtor is

involved in customer service, soliciting hauling opportunities and brokering such business to independent contracting haulers. Debtor has a salaried, full-time position and works Monday through Friday. Debtor occasionally must work from home in the evenings. Debtor received a bonus in 1997 and 1998,[1] but Debtor's employer is not contractually obligated to provide such a bonus. Debtor's current net monthly income, including the amount received from Social Security, is $1,828.00. Debtor testified that she is the most senior employee at 3 Rivers Transportation, Inc. and that there is no prospect of her receiving any type of promotion. Debtor looks in the newspaper for other jobs for which she is qualified but has not seen anything which would pay her more than what she earns now.

Debtor has taken deferments and forbearances on the Loan. From November 1997 to May 1998, Debtor took a second job dispatching trucks on weekends. Debtor took this job in an attempt to earn the income required to make payments on the Loan; after taking the second job, Debtor made three payments on the Loan in the amount of $130 each. The financial benefit from taking the second job was limited, because Debtor had to pay for child care for her dependent children while she was at work and was pushed into a higher tax bracket by the additional income. Debtor quit the second job because the income which she generated was insufficient to fund the interest accruing on the Loan, her children missed her on the weekends, and she felt that she had a responsibility to be involved in her children's upbringing, which responsibility could not be fulfilled by a babysitter.

Debtor owns a 1991 Corsica which has 89,000 miles on it. Debtor's loan for the car, for which she makes payments of $214.38 per month, will be paid off in one year. Debtor and her children live in a house with two bedrooms; her son and daughter share one of the bedrooms. The parties stipulated that Debtor's average monthly expenses, excluding her car payment, are as follows: $350.00 for rent, $87.00 for electricity, $51.00 for heat, $45.00 for telephone, $450.00 for food, $50.00 for clothing, $50.00 for medical expenses,[2] $43.00 for automobile insurance, $90.00 for gas and oil for transportation, $25.00 for car maintenance,[3] $125.00 for entertainment[4] and $311.00 for child care and school lunches.[5] Consequently, Debtor's average monthly expenses, including car payments, are approximately $1,891.00, which exceeds Debtor's current net monthly income of $1,828.00.

## II. CONCLUSIONS OF LAW

▆ This Court must now determine whether Debtor is entitled to a hardship

---

1. Debtor testified that she received a $500 holiday bonus, from which taxes were withheld, in 1998; the Court was not informed as to the amount of Debtor's 1997 bonus. Debtor testified that she did not expect to receive a bonus this year because business is down from 1998.

2. Debtor incurs a $15.00 co-pay for each prescription and pays 10% of a doctor's charge per visit. The expense of $50.00 per month arises from an estimate of one illness for the family per month, as well as the cost of Ritalin which has been prescribed for her younger son and hormonal medication which Debtor requires as a result of a hysterectomy.

3. Debtor testified that this amount does not fully cover the cost of maintaining her 1991 car.

4. Debtor's entertainment expense is largely incurred for her children's benefit and includes video rental, purchasing birthday cards, taking her children rollerskating, participation in a baseball league and $27.00 per month for cable television. Debtor testified that cable television provides her family with access to Nickelodean, which entertains her younger son and provides her with a brief opportunity to rest.

5. Child care costs $20.00 per week during the school year (i.e., $8.00 per hour for an aggregate of 2.5 hours before and after school per day), except for school vacation and sick days, when Debtor must pay for full-day child care at the cost of $80.00 per week. School lunches cost $7.00 per week, per child.

discharge under 11 U.S.C. § 523(a)(8)(B). That section provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(B). This section embodies a policy decision that the repayment of federally insured educational loans generally trumps providing a fresh start to debtors. *Andrews University v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir.1992). However, this policy choice is tempered by the "undue hardship" exception. *Elebrashy v. Student Loan Corp. (In re Elebrashy)*, 189 B.R. 922, 925 (Bankr. N.D.Ohio 1995).

■ Neither the Bankruptcy Code nor the legislative history of § 523(a)(8)(B) define "undue hardship." Generally, courts have determined that undue hardship is more than mere unpleasantness or "garden-variety" difficulty. *Gammoh v. Ohio Student Loan Comm'n (In re Gammoh)*, 174 B.R. 707, 709 (Bankr.N.D.Ohio 1994) (stating that undue hardship usually requires some extraordinary circumstances). In their struggle to define "undue hardship," courts have developed a tripartite test widely followed in this Circuit. *See Silliman v. Nebraska Higher Educ. Loan Program (In re Silliman)*, 144 B.R. 748 (Bankr.N.D.Ohio 1992); *Foreman v. Higher Educ. Assist. Foundation (In re Foreman)*, 119 B.R. 584 (Bankr.S.D.Ohio 1990) (discussing the mechanical, good faith and policy tests). The Sixth Circuit, while not adopting a test *per se*, has applied the factors set forth in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987) for determining when undue hardship exists. *See Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir.1998); *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), *cert. denied*, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995). Courts in this circuit have widely followed the *Brunner* test. *See Dolph v. Pennsylvania Higher Education Assistance Agency (In re Dolph)*, 215 B.R. 832, 836 (6th Cir. BAP 1998); *Pantelis v. Kent State Univ. (In re Pantelis)*, 229 B.R. 716, 718 (Bankr.N.D.Ohio 1998); *In re Elebrashy*, 189 B.R. 922; *Cobb v. Univ. of Toledo (In re Cobb)*, 188 B.R. 22 (Bankr. N.D.Ohio 1995); *McLeod v. Diversified Collection Services (In re McLeod)*, 176 B.R. 455 (Bankr.N.D.Ohio 1994).

■ Under the *Brunner* test, this Court must determine:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period . . . ; and

(3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d. at 396. The debtor must establish the existence of an "undue hardship" by the preponderance of the evidence. *Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 393 (E.D.Mich.1993); *In re Cobb*, 188 B.R. at 23.

A. *Standard of Living*

■ Under the first prong of the *Brunner* test, Debtor must show that she cannot maintain a minimal standard of living for herself *and her dependents* while re-

paying her educational loans. When assessing this prong, the courts look to factors such as current income and expenses and whether the debtor is maximizing employment opportunity and resources, while minimizing expenses. *In re McLeod,* 176 B.R. at 457.

Debtor dropped out of high school in tenth grade. She later attended Wayne County Community College but could not complete her course work as a result of a high risk pregnancy. Debtor's incomplete course work in elementary education does not enable her to obtain a job in elementary education. Debtor has secured a job for which she earns a gross annual salary of $23,520. Debtor has remained with her current employer for the last seven years. With her qualifications, Debtor has been unable to locate a job which would pay her more than she earns now, and it appears that Debtor is maximizing her employment opportunity and resources.

Debtor's monthly net income based on wages and the Social Security disability payments she receives for her younger son and daughter is $1,828.00. This amount is below her stipulated expenses of $1,891.00. Moreover, the stipulated expenses do not take into account the actual cost of maintaining Debtor's 1991 automobile. It is readily apparent to this Court that Debtor lives a frugal lifestyle and has done her best to minimize her expenses.

One of the key deciding factors for this Court is the impact that requiring the repayment of the Loan would have on Debtor's younger son and daughter. Debtor is a single parent who is working very hard to provide for the physical and emotional needs of her children. The father of the children is unable to contribute to either set of needs. Debtor and her dependents live a spartan life. Requiring repayment of the Loan would not only jeopardize the minimal standard of living now experienced by Debtor and her children, but will further impose many years of seven-day work weeks on Debtor and thereby deprive her children of important and meaningful supervision and influence by a family member.

B. *Additional Circumstances*

The second prong of the *Brunner* test requires that a debtor show that the circumstances which preclude payment on the student loans are likely to persist for a significant portion of the repayment term. *In re Cheesman,* 25 F.3d at 359. If the debtor's situation is likely to improve, then requiring the debtor to pay on the loan would not impose an undue hardship. However, if the inability to repay will extend well into the future, then it is likely that requiring payment would be an undue hardship. *See In re Elebrashy,* 189 B.R. at 927–28.

In this case, Debtor has demonstrated that her difficult circumstances are more likely than not to persist well into the future. Debtor lacks a college degree and cannot return to college because of the obligation to provide for her children, the father of whom is mentally ill and incapacitated. Debtor has attempted to maximize her income through her current, steady employment, but there is no prospect of her receiving any promotion in her current position. Based on her skills, it is likely that this is the best job she will obtain. In short, Debtor's prospect for advancement is unlikely. *See Lebovits v. Chase Manhattan Bank (In re Lebovits),* 223 B.R. 265, 273 (Bankr.E.D.N.Y.1998) (holding that 40 year old social worker, who was "not the typical recent graduate with his entire career ahead of him and an untested earning potential" and who was "earning close to the maximum salary he can expect to receive in his field … without returning to school" satisfied the second prong of the *Brunner* test).

Debtor's expenses are unlikely to decrease while her children remain dependent on her. Although Debtor had only 12 monthly car payments remaining at the time of the trial, Debtor's car is a 1991 model, with 89,000 miles on it. Once paid

off, Debtor's car likely will require maintenance expenditures significantly in excess of the $25.00 per month which Debtor has budgeted, or Debtor will have to replace her car. In addition, given that Debtor's children are currently ages 7 and 8, Debtor will remain responsible for their living expenses for a considerable period of time. Some of her expenses are significantly below market, e.g., rent, and more likely than not to increase substantially in the future.

Because Debtor's income is highly unlikely to increase in any meaningful amount, and Debtor's expenses are similarly unlikely to decrease, Debtor's inability to pay the Loan is likely to persist for a significant portion of the repayment term.

### C. Good Faith Effort

The final prong of the *Brunner* test requires a debtor to have made a good faith effort to repay the loan, and that repayment is prevented by forces beyond the debtor's reasonable control. *In re Cobb,* 188 B.R. at 24. Factors to be considered include the number of payments made by the debtor, the debtor's attempt to negotiate with the lender, the proportion of loans to total debt, and possible abuse of the bankruptcy process. *See In re Cheesman,* 25 F.3d 356; *In re Healey,* 161 B.R. 389; *In re Cobb,* 188 B.R. 22; *In re McLeod,* 176 B.R. at 457. With respect to payments made to the lender, a failure to pay will not result in a finding of lack of good faith when the debtor has no funds to make any repayment. *Hawkins v. Buena Vista College (In re Hawkins),* 187 B.R. 294, 299 (Bankr.N.D.Iowa 1995) (noting that "the test of a debtor's good faith must take into account her ability to pay" and holding that 39 year old divorced woman with three dependent children was entitled to hardship discharge of student loans although debtor had not made any payments on loans); *In re Lebovits,* 223 B.R. at 274 ("Since a debtor's good faith is interpreted in light of his ability to pay, a complete failure to make even minimal payments on a student loan does not prevent a finding

of good faith where the debtor never had the resources to make payments."); *In re Elebrashy,* 189 B.R. at 928–29.

In this case, Debtor testified that she took a second job for five months beginning in November 1997 in an effort to earn the income required to make payments on the Loan. Debtor made three $130.00 payments on the Loan as a result of the income earned in that job. However, the slight financial benefit of the second job, which placed Debtor into a higher tax bracket and did not even pay the interest accruing on the Loan, was far outweighed by the detrimental impact on Debtor's children, for whom she was then absent the majority of the weekend. Without the second job, Debtor does not have sufficient income to pay the Loan and to maintain a minimal standard of living. Debtor's five-month effort to work a second job and thus obtain additional income to repay the Loan, which effort was curtailed because it generated little additional income and required Debtor to be away from her children nearly the entirety of their waking day, every day, constitutes a good faith effort to repay the Loan.

Debtor has incurred various debts with a number of other creditors and sought credit counseling prior to filing this case. Her credit counselor reportedly advised her that bankruptcy was Debtor's only reasonable response to her indebtedness. It is clear to this Court that Debtor is not trying to escape her repayment obligation, only to secure a better paying job soon thereafter. Debtor has secured the best job she is likely to have, and there is no indication that she is abusing the bankruptcy process. *In re Cheesman,* 25 F.3d at 359 (holding that debtors acted in good faith and qualified for a hardship discharge where there was "no indication that they were attempting to abuse the student loan system by having their loans forgiven before embarking on lucrative careers").

### III. CONCLUSION

Debtor is working very hard to provide for her children, both financially and emo-

tionally. If she were required to repay her educational loan, Debtor and her dependents could easily fall below the minimal standard of living that they are achieving. Moreover, Debtor would be forced to become an absentee parent, with a significantly detrimental impact on her children's development and little offsetting benefit in terms of the amount of the Loan which could be repaid were Debtor to work two jobs. Furthermore, Debtor's circumstances are likely to persist well into the foreseeable future. Therefore, this Court finds that a hardship discharge of the Loan pursuant to 11 U.S.C. § 523(a)(8)(B) is warranted.

**IT IS SO ORDERED.**